RECEIVED
JUN 13 2022
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**MATTHEW OLIVER REARDON**

Plaintiff

v.                                                    **CAUSE 3:22-CV-050-SA-JMV**

**STATE OF MISSISSIPPI;**
**LAFAYETTE COUNTY, MS;**
**LAFAYETTE COUNTY CHANCERY COURT;**
**COMMUNICARE;**
**MS DEPARTMENT OF MENTAL HEALTH;**
**LAFAYETTE COUNTY SHERIFF'S DEPT;**
**JOSEPH B. EAST;**
**DR SANDY ROGERS;**
**RACHEL ALCORN;**
**SUSAN BEARD;**
**SHERRY WALL;**
**JEFF BUSBY;**
**DAVID O'DONNELL**

Defendants

# FIRST AMENDED COMPLAINT

# JURY DEMANDED

1

**PLAINTIFF MATTHEW OLIVER REARDON, HEREAFTER SHALL BE REFERENCED TO AS "PLAINTIFF" BRINGS THIS ACTION ALLEGING:**

## INTRODUCTION

**The basis of this lawsuit** is founded in principle and already settled case law surrounding deprivation of liberty and the constitutionality of controversial state mental health laws. This complaint alleges numerous constitutional rights violations under the 1st amendment, the 4th amendment, the 5th amendment, and the 14th amendment's substantive right to liberty other than by Due Process of Law. Plaintiff suffered irreparable injury from two separate incidents in which the State of Mississippi's Mental Health Laws were exploited by state actors in order to deprive the plaintiff of his first amendment right to petition the government for redress of grievances among other rights including his substantive right to be free from continued confinement as well as his right to liberty. This complaint details out numerous constitutional rights violations as well as it incorporates well settled case law on this similar set of events. As such it requires a trial to be facilitated and for the trier of fact, the jury, to hear the case. Although not currently raised, in anticipation of any motion for dismissal which may be raised by any Defendant and presented to this honorable court, Plaintiff raises the following set of facts. The Ninth Circuit has ruled, that when reviewing a Rule 12(b)(6) motion, a federal court must "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party." Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). As the Supreme Court has stated, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Rather, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The trial court must view the evidence and all inferences drawn in the light most favorable to the plaintiff. Any Reasonable doubt as to whether the plaintiff produced sufficient evidence of the wrong(s) alleged must be resolved in the plaintiff's favor and the motion to dismiss denied. As this honorable court is aware, Review of a dismissal in the onset is a de novo review. In this case the court accepts all allegations of the complaint as true and construes the facts in the light most favorable to the plaintiff. Harry v. Marchant, 237 F.3d 1315, 1317 (11th Cir. 2001). Plaintiff expresses his full intent to appeal any such dismissal of his complaint to the Fifth Circuit Court of Appeals.

## REFERENCED CASE LAW ESTABLISHING BASIS OF LAWSUIT

Many facts alleged coincide and align with the facts alleged in **O'Conner v Donaldson.** In it, Kenneth Donaldson, was civilly committed to confinement as a mental patient in the Florida State Hospital at Chattahoochee in January 1957. He was kept in custody there against his will for nearly 15 years. Donaldson's commitment was initiated by his father, who thought that his son was suffering from "delusions." After hearings before a county judge of Pinellas County, Fla., Donaldson was found to be suffering from "paranoid schizophrenia" and was committed for "care, maintenance, and treatment" [422 U.S. 563, 566] pursuant to Florida statutory provisions that have since been repealed. The state law was less than clear in specifying grounds necessary for commitment [422 U.S. 563, 567]. This remains to be the same case for the State

of Mississippi, combined with acts of malice, negligence, and blatant disregard for the rights of another by the Defendants listed in this complaint.

## In June 1975 the Supreme Court issued final ruling finding the following:

1. The fact that state law may have authorized confinement of the harmless mentally ill does not itself establish a constitutionally adequate purpose for confinement. *See Jackson v. Indiana, supra, at 720-723; McNeil v. Director, Patuxent Institution, 407 U.S. 245, 248 -250.*

2. A finding of "mental illness" alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement. Assuming that that term can be given a reasonably precise content and that the "mentally ill" can be identified with reasonable accuracy, there is still no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom.

3. May the State confine the mentally ill merely to ensure them a living standard superior to that they enjoy in the private community? That the State has a proper interest in providing care and assistance to the unfortunate goes without saying. But the mere presence of mental illness does not disqualify a person from preferring his home to the comforts of an institution. Moreover, while the State may arguably confine a person to save him from harm, incarceration is rarely if ever a necessary condition for raising the living standards of those capable of surviving safely in freedom, on their own or with the help of family or friends. *See Shelton v. Tucker, 364 U.S. 479, 488 -490*

4. May the State fence in the mentally ill solely to save its citizens from exposure to those whose ways are different? One might as well ask if the State, to avoid public unease, could

incarcerate all who are physically unattractive or socially eccentric. Mere public intolerance or animosity cannot constitutionally justify the deprivation of a person's physical liberty. *See, e.g., Cohen v. California, 403 U.S. 15, 24 -26; Coates v. City of [422 U.S. 563, 576] Cincinnati, 402 U.S. 611, 615; Street v. New York, 394 U.S. 576, 592; cf. U.S. Dept. of Agriculture v. Moreno, 413 U.S. 528, 534 .*

5.  In short, a State cannot constitutionally confine without more a non-dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends.

6.  The jury found, upon ample evidence, that O'Connor, as an agent of the State, knowingly did so confine Donaldson, it properly concluded that O'Connor violated Donaldson's constitutional right to freedom and awarded compensatory and punitive damages to Donaldson.

## PRELIMINARY STATEMENTS

7.  Plaintiff brings this action to vindicate his First, Fourth, and Fifth Amendment rights made applicable to the States through the equal protections of the law guaranteed under the Fourteenth Amendment and further protected under 42 U.S.C § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and 42 U.S.C. § 1988, which all together establish this court as having the primary jurisdiction.

8.  Information and Evidence demonstrates that the conduct by the named Defendants far exceeds negligence, and in fact shows intent through a deliberate indifference to Plaintiff's constitutional rights, in particular as an independent journalist and reporter.

9. The injuries primarily sustained by Plaintiff produce various causes of action, both civil and criminal, which include but not limited to: 42 USC 1983 Denial of Rights Under Color of Law, 18 USC 242, denial of due process of law under the 5th & 14th Amendments, 42 USC 1985 Conspiracy to remove civil rights, conspiracy/collusion, fraud/misrepresentation, obstruction of justice, intentional infliction of emotional distress (tort of outrage), negligent infliction of emotional distress (tort of outrage), tortious interference into business, familial interference, and loss of consortium.

10. While this complaint primarily addresses events that took place in December of 2021 through March of 2021, it is the continued immoral, unlawful, and unconstitutional acts committed and repeated by Lafayette County Officials dating back to May of 2017 which go unchecked and unpunished that are attributable to the massive Civil Rights Violations and consequently the irreparable injury that the Plaintiff has incurred and suffered as a result.

11. The named Defendants through ways of collusion and exploitation have sought to cover up serious discrepancies and shocking criminal acts committed by way of intentionally suppressing Plaintiff and utilizing methods equating to Human Trafficking to completely deprive the Plaintiff of his substantive due process right to liberty other than by due process of law guaranteed through the Fourteenth Amendment.

12. Defendants willfully and maliciously conspired, planned, and agreed to seek judicial commitment through full exploitation of the State of Mississippi's outdated mental health laws for an extended period of time while no act of plaintiff was ever considered criminal.

13. Defendants sought complete suppression of the matters through force, intimidation, and dilution of Plaintiff's discovery through applying unfair and unfitting allegations of mental illness on Plaintiff.

14. The listed Defendants have purposely, forcefully, and maliciously violated plaintiff's right to freedom of speech, his right to peaceful assembly; his right to petition the government for redress of his grievances; his right to be secure in his person and his home; and his right not to be enslaved nor deprived of life and liberty other than by due process of law, and his right to receive equal protections through the laws of the United States of America and the State of Mississippi

15. In doing so Defendants have knowingly and willfully hindered the due course of justice by acts of conspiracy in a rash attempt to cover up the serious discrepancies Plaintiff discovered stemming from the Circuit Court Clerk's office involving records being "mysteriously" changed on two currently filed and open civil matters of the plaintiff.

16. Plaintiff states that the magnitude of the attacks by Defendants, allowed to go unchecked and unscathed, now chills the constitutional rights of all citizens, in particular members of the press such as journalists and reporters.

17. That the multiple named Defendants, through both negligence and intentional violations of multiple rights retained and stated by the Plaintiff, have demonstrated a deliberate indifference to plaintiff's rights in an act to publicly deceive.

18. In so doing the Defendants have violated both state and federal law while acting under color of law through neglecting to uphold the duties of their respective offices and their

oaths they swore to uphold.

19. Through the wanton acts detailed out in this complaint, each defendant shall be considered to have waived away any and all qualified or special immunity which they may have been entitled.

20. All citizens are guaranteed the inherent right under the First Amendment to the United States Constitution to peacefully assemble and to petition the Government for a Redress of Grievances.

21. Not only are these Federally Protected rights guaranteed to all citizens but Enhanced special protections under the First Amendment are additionally put in place guaranteeing freedom of the press, to help ensure that identifying members (i.e., journalists and reporters) are not hindered, targeted, or retaliated upon simply for performing the basic functions and duties of their jobs.

22. The named Defendants have grotesquely violated the First Amendment to the U.S. Constitution through hindering and obstructing the Plaintiff's Guaranteed Right to assemble peacefully and to Petition the Government for a redress of grievances both as a concerned private citizen and an identified member of the press as an independent journalist/investigative reporter.

23. Both this Complaint and the actions of the defendants in this complaint will demonstrate that the State of Mississippi's Mental Health Laws are easily exploitable and unconstitutional on their present face due to being in direct violation of the Substantive Due Process Rights of a citizen. Thus, the current legislation should be struck down as

Unconstitutional and overhauled to meet the standards of Federal Law that was decided in O'Connor v. Donaldson 422 U.S. 563 (1975)[1]

24. In the interest of safety due to a continuation of injury sustained, plaintiff prays that this court enjoin the Defendants into a stipulated protection order regarding all matters involving the Plaintiff, further prohibiting any employee or authorized agent of the Lafayette County Sheriff's Department from intruding upon any property of the plaintiff or his family.

25. This complaint alleges multiple State Claims which coincide with the Federal violations detailed herein; such claims are listed out and stated in this complaint

## JURISDICTION AND VENUE

26. This action is brought under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 1988 and state law to redress the deprivation under color of law of Matthew Reardon's rights as secured by the United States Constitution.

27. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1367.

28. Venue is proper under 28 U.S.C. § 1391(b) and (c). On information and belief, all parties reside in the District of Mississippi, and the events giving rise to the claims asserted herein all occurred within this district.

---

[1] **O'Connor v. Donaldson was a Landmark Case on Mental Health Laws decided by the US Supreme Court in 1975. In it The United States Supreme Court ruled that a state cannot constitutionally confine a non-dangerous individual who is capable of surviving safely in freedom by themselves or with the help of willing and responsible family members or friends**

## PARTIES

29. **Plaintiff MATTHEW REARDON** is an individual over the age of eighteen (18) years and a resident of the United States currently residing in Mississippi.

30. **Defendant STATE OF MISSISSIPPI** is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1), and is therefore subject to Title II of the ADA, 42 U.S.C. § 12131 et seq., and its implementing regulations, 28 C.F.R. pt. 35. The State of Mississippi shall be served with process through its Office of The Attorney General at 550 High Street, Jackson MS 39201.

31. **Defendant LAFAYETTE COUNTY, MISSISSIPPI** is a county in North Mississippi and the residing county for Ole Miss. Lafayette County is held jointly responsible for damages occurred and named in this lawsuit. Lafayette County shall be served with process through its Board Secretary Sherry Wall whom may be found at 300 North Lamar Blvd, Oxford MS 38655.

32. **Defendant LAFAYETTE COUNTY CHANCERY COURT** is a court of equity in Lafayette County, Mississippi. Lafayette County shall be served with process at 300 North Lamar Blvd, Oxford MS 38655

33. **Defendant COMMUNICARE** is a quasi-government corporation certified through the Mississippi Department of Mental Health to offer mental health services to citizens of Lafayette County, Mississippi. Its Executive Director is Doctor Sandy Rogers. It is located and may be served with process at 152 Highway 7 South; Oxford, MS 38655.

34. **Defendant MS DEPARTMENT OF MENTAL HEALTH** is the agency/division responsible for providing mental health services to the public, with that comes the responsibility of mitigating liability through providing proper education and training surrounding the Mental Health Laws in effect which are contained in MS Code § 41-21-61 through § 41-21-107. It is located at 239 N Lamar St, Jackson MS 39201 and may be served with process at that address.

35. **Defendant LAFAYETTE COUNTY SHERIFFS DEPARTMENT** is located at 711 West Jackson Avenue, Oxford MS 38655 and houses the Lafayette County Detention Center.

36. **Defendant JOSEPH B EAST** is an individual over the age of eighteen (18) years and a resident of the United States. At all times relevant to this Complaint, Defendant East held the position of Lafayette County Sheriff, an elected official of Lafayette County and the State of Mississippi. At all times relevant to this Complaint, Defendant East was acting under color of state law and in the course and scope of his employment as Lafayette County Sheriff. Defendant East is sued in both his official and individual capacity. Defendant East may be served process at 711 West Jackson Avenue, Oxford MS 38655

37. **Defendant SHERRY WALL** is an individual over the age of eighteen (18) years and a resident of the United States. At all times relevant to this Complaint, Defendant Wall held the position of Lafayette County Chancery Clerk, an elected official of Lafayette County and the State of Mississippi. At all times relevant to this Complaint, Defendant Wall was acting under color of state law and in the course and scope of her employment as Lafayette County Chancery Clerk. Defendant Wall is sued in both her official and individual capacity.

11

Defendant Wall shall be served with process at 300 N. Lamar Blvd Oxford, MS 38655

38. **Defendant JEFF BUSBY** is an individual over the age of eighteen (18) years and a resident of the United States. At all times relevant to this Complaint, Defendant Busby held the position of Lafayette County Circuit Clerk, an elected official of Lafayette County and the State of Mississippi. At all times relevant to this Complaint, Defendant Busby was acting under color of state law and in the course and scope of his employment as Lafayette County Circuit Clerk. Defendant Busby is sued in both his official and individual capacity. Defendant Busby may be served with process at 1 Courthouse Square, Suite 101, Oxford MS 38655

39. **Defendant DR SANDY ROGERS** is an individual over the age of eighteen (18) years and a resident of the United States currently residing in Mississippi. Dr. Rogers is the Executive Director of Communicare, a Quasi-Governmental Corporation offering mental health care. Communicare is certified by the MS Department of Mental Health, and the primary listed address for Communicare is 152 Highway 7 South; Oxford, MS 38655.

40. **Defendant RACHEL ALCORN** is an individual over the age of eighteen (18) years and a resident of the United States currently residing in Mississippi. Upon information and belief, Defendant Alcorn is the supervisor over I.O.P at Communicare, a Quasi-Governmental Corporation offering mental health care. Communicare is certified by the MS Department of Mental Health, and the primary listed address for Communicare is 152 Highway 7 South; Oxford, MS 38655.

41. **Defendant SUSAN BEARD** is an individual over the age of eighteen (18) years and a

resident of the United States currently residing in Mississippi. Upon information and belief, Defendant Beard is a counselor at Communicare, a Quasi-Governmental Corporation offering mental health care. Communicare is certified by the MS Department of Mental Health, and the primary listed address for Communicare is 152 Highway 7 South; Oxford, MS 38655.

## STATUTORY BACKGROUND

42. The 4th Amendment incorporated to apply to the States through the 14th Amendment protects individuals from unreasonable seizures. Because they involve unreasonable seizures, constitutional claims for false arrest against state and public officials arise under the 4th amendment. *Carter v. Butts County,, 821 F.3d 1319*

43. Any officer or official asserting entitlement to qualified immunity "must first prove that he was acting within the scope of his discretionary authority." Lee, *284 F.3d at 1194* **(quoting Courson v. McMillian,** *939 F.2d 1479, 1487* (11th Cir. 1991))

44. If the officer establishes that his actions were within the scope of his discretionary authority, then the burden shifts to the plaintiff to establish that the officer violated a constitutional right and that the right was clearly established at the time of the alleged violation. *See Carter vs Butts, 821 F.3d at 1319; Lee vs Ferraro, 284 F.3d at 1194.*

45. To state a claim under section 1983, a plaintiff must allege facts tending to show (1) that he has been "deprived of a right 'secured by the Constitution and the laws' of the United States," and (2) that the deprivation was caused by a person or persons acting "under color of" state law. *See Flagg Bros. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185*

*(1978).*

46. Because the Fourteenth Amendment protects liberty and property interests only against invasion by the state, a section 1983 plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show that state action caused his injury. *See Landry v. A-Able Bonding, Inc., 75 F.3d 200, 203 (5th Cir.1996).*

47. Private action may be deemed state action, for purposes of section 1983, only where the challenged conduct may be "fairly attributable to the State." *Lugar, 102 S.Ct. at 2753.*

48. The fair attribution test has two parts:

    a) The deprivation must be caused by exercise of some right or privilege created by the State or by rule of conduct imposed by the state or by person for whom the State is responsible.

    b) The party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Lugar, 102 S.Ct. at 2753-54.*

49. The state compulsion (or coercion) test holds that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982)*

50. In O'Connor vs Donaldson, a landmark Supreme Court Ruling on mental health law, Donaldson's commitment was initiated by his father, who thought that his son was suffering from "delusions." After hearings before a county judge of Pinellas County, Fla., Donaldson was found to be suffering from "paranoid schizophrenia" and was committed for "care, maintenance, [422 U.S. 563, 566] and treatment" pursuant to Florida statutory provisions that have since been repealed.

51. In it the Supreme Court decided that A State cannot constitutionally confine, without more, a non-dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends, and since the jury found, upon ample evidence, that petitioner did so confine respondent, it properly concluded that petitioner had violated respondent's right to liberty. O'Connor vs Donaldson 422 US 573-576.

52. To initiate civil commitment proceedings, any "interested person" may file an affidavit with the clerk of the state chancery court. This affidavit must contain specific factual descriptions of the behavior of the proposed patient (or proposed respondent), and MUST be supported by observations of named witnesses. "Affidavits shall be stated in behavioral terms and shall not contain judgmental or conclusory statements." MS Code Section 41-21-65.

53. "To deprive any citizens of his or her liberty upon the altruistic theory that the confinement is for humane therapeutic reasons and then fail to provide adequate treatment violates the very fundamentals of due process." Wyatt v. Stickney, 325 F. Supp. 785

54. MS § 41-21-67 (1) states "The order may provide where the person shall be held before

being taken for pre-evaluation screening and treatment. However, when the affidavit fails to set forth factual allegations and witnesses sufficient to support the need for treatment, the chancellor shall refuse to direct issuance of the writ. Reapplication may be made to the chancellor."

55. MS § 41-21-71 states "If the chancellor or chancery clerk finds, based upon the appointed examiners' certificates and any other relevant evidence, that the respondent is in need of treatment and the certificates are filed with the chancery clerk within forty-eight (48) hours after the order for examination, or extension of that time as provided in Section 41-21-69, the clerk shall immediately set the matter for a hearing. The hearing shall be set within seven (7) days of the filing of the certificates unless an extension is requested by the respondent's attorney. In no event shall hearing be more than ten days after the filing of certificates."

56. MS § 41-21-73 (2) states "The respondent must be present at the hearing unless the chancellor determines that the respondent is unable to attend and makes that determination and the reasons therefor part of the record. At the time of the hearing, the respondent shall not be so under the influence or suffering from the effects of drugs, medication or other treatment so as to be hampered in participating in the proceedings. The court, at the time of the hearing, shall be presented a record of all drugs, medication or other treatment that the respondent has received pending the hearing, unless the court determines that such a record would be impractical and documents the reasons for that determination."

57. MS § 41-21-73 (3) states "The respondent shall have the right to offer evidence, to be confronted with the witnesses against him and to cross-examine them and shall have the privilege against self-incrimination. The rules of evidence applicable in other judicial

proceedings in this state shall be followed. A representative from a treatment facility shall be present at the hearing to explain possible treatment options to the respondent."

58. MS § 41-21-73 (4) states "If the court finds by clear and convincing evidence that the proposed patient is a person with mental illness or a person with an intellectual disability and, if after careful consideration of reasonable alternative dispositions, including, but not limited to, dismissal of the proceedings, the court finds that there is no suitable alternative to judicial commitment, the court shall commit the patient for treatment in the least restrictive treatment facility that can meet the patient's treatment needs. Treatment before admission to a state-operated facility shall be located as closely as possible to the patient's county of residence and the county of residence shall be responsible for that cost. Admissions to state-operated facilities shall be in compliance with the catchment areas established by the State Department of Mental Health."

59. MS § 41-21-74 (3) states "The respondent may be returned to the treatment facility as soon thereafter as facilities are available. The respondent may request a hearing within ten (10) days of his return to the treatment facility."

60. MS § 41-21-74 (4) states "The chancery court of the county where the public facility is located, or the committing court shall have jurisdiction over matters concerning outpatient commitments when such an order is sought subsequent to an inpatient course of treatment pursuant to Sections 41-21-61 through 41-21-107, 43-21-611, 99-13-7 and 99-13-9. An outpatient shall not have or be charged for a recommitment process within a period of twelve (12) months of the initial outpatient order."

61. MS § 41-21-104 states "The court shall have continuing jurisdiction over a person committed to an inpatient or outpatient treatment program under this chapter for one (1) year after completion of the treatment program. During that time, the court, upon affidavit in the same cause of action, may conduct a hearing consistent with this chapter or Title 41, Chapter 31, Mississippi Code of 1972, to determine whether the person needs to be recommitted for further mental health treatment or to determine whether the person is in need of alcohol and drug treatment. Upon a finding by the court that the person is in need of further treatment, the court may commit the person to an appropriate treatment facility. The person subject to commitment must be afforded the due process to which he or she is entitled under Chapters 21 and 31 of Title 41, Mississippi Code of 1972. This section may not be construed so as to conflict with the provisions of Section 41-21-87."

62. Pursuant to Mississippi State Law, any person who conspires unlawfully to cause, or unlawfully causes, any person to be adjudicated in need of treatment or as incompetent or to be detained at, or admitted to, or hospitalized in a treatment facility, or any person who receives or detains any person in need of treatment, contrary to Sections 41-21-61 through 41-21-107 , or any person who maltreats any person in need of treatment, or any person who knowingly aids, abets or assists and encourages any person in need of treatment, to be absent without permission from any treatment facility or custodian in which or by whom such person is lawfully detained, or any person who violates any provision contained in Sections 41-21-61 through 41-21-107 shall be guilty of a misdemeanor and upon conviction be fined not less than Five Hundred Dollars ($500.00) nor more than One Thousand Dollars ($1,000.00), or imprisoned in the county jail not exceeding one (1) year, or both.

## FACTS

**63.** In July 2021 plaintiff had obtained press credentials, further providing official notice that he was a credentialed Reporter/Photographer/Journalist as a member in good standing with the Constitution First Amendment Press Association for independent work in journalism and reporting.

**64.** On November 4th, 2021 Plaintiff went to trial in Lafayette County Justice Court for 9 separate charges placed against him by Lafayette County Sheriff's Department and his ex, Phyllis "Liz" Crowder on 3 separate events. 2 of the 9 charges came from a situation resulting in an alleged Disorderly Conduct and Resisting Arrest. December 27, 2020 an email was sent to Sheriff East with "Criminal Conspiracy" in the subject line reporting alleged crimes involving the harboring and perceivable exploitation of Plaintiff's firstborn child which was opened approximately 2-hours later by the Sheriff. An investigation and assistance in stopping it was requested. Yet no response came from Sheriff East and this is the sole reason that brought plaintiff to the Sheriff's Department on December 28, 2020 seeking assistance of the sheriff due the alleged crimes continuing to be committed. Plaintiff claims the complaints alleged were ill-brought, retaliatory, and relied upon mob-domination and the knowing use and introduction of perjured testimony by Lafayette County Sheriff's Department; in particular Deputies Dixon and Tidwell; and that both perjured and defamatory statements were given under oath by the Lafayette County Sheriff. Joey East.

**65.** Plaintiff attests that a sloppy, inconsistent investigation attributed to the event leading to three of the nine charges alleged by Deputies Beavers and Williford at trial, and that evidence was never properly preserved by Lafayette County Sheriff's Department for the

purposes of trial despite it being requested and demanded on numerous occasions.

66. Further Plaintiff was denied a trial by jury to hear and view all facts and evidence in the matter despite the matter being highly contested and multiple judges recusing themselves from the matter.

67. Nearly 3-weeks later the verdict is returned that Plaintiff was found guilty of all charges by all charges by Dixon, Tidwell, Beavers, and Williford in a trial that utilized mob domination, the introduction and use of perjured testimony which evidence fully contradicted, and the spoliation of key evidence that would go to proving Plaintiff's complete innocence in the matter.

68. On December 3, 2021 Affiant filed a cover page and motion seeking complete dismissal of conviction rendered and citing well cited and established federal and state law supporting his position that his Due Process Rights had again been violated by the county and that the new convictions must be set aside. The new civil case was filed in Lafayette County Circuit Court under cause L21-494. This filed motion may be viewed by visiting **BANISH.ME/L21-494**

69. At the time of filing, Clerk Chyna Sinervo advised plaintiff that his newly filed case had been assigned to Judge Kent Smith and that the system uses a random algorithm to select the presiding judge in the interest of fairness and to avoid impropriety.

70. On that same day, December 3rd, 2021, Plaintiff received an email from Lafayette County Board Attorney David O'Donnell in which O'Donnell would appear to be giving a premonition warning about what would undoubtedly end up happening. The email, which

will be attached as an Exhibit A stated in conclusion:

> *Finally, the clerks report that you have been verbally abusive toward them and that the behavior seems to be increasing in frequency and intensity. There is no need for behavior that disrupts court business and decorum and, if it continues, the judges of the court may pursue their options to address the behavior. I therefore believe that your use of the public computer terminal will work for everyone.*

71. Defendants Lafayette County and Mr. O'Donnell should be compelled by this court to show cause and evidence they possessed at the time claims/complaints were levied against the Plaintiff.

72. Lafayette County Board Attorney David O'Donnell states in his email "Clerks", insinuating multiple. However, Plaintiff denies any and all allegations of this and labels this as being categorically false. Not to mention, Mr. O'Donnell failed to specify any particular occurrence in his email to reference.

73. On December 6, 2021 Plaintiff discovered a "mysterious" altering of court records regarding assignment of judge in both of his filed and active matters in Lafayette County Circuit Court. Facts surrounding the matter show that this alteration of record was not some accident or mistake that open legal matters were intentionally manipulated, the particular records were fraudulently altered, in turn has tainting the particular matters under contest and infesting them with prejudice and bias. Evidence of changed court records can be viewed at **BANISH.ME/EXHIBIT-A**

74. This just so happened to be the second time in sixteen months' time, on two currently still open circuit court matters, that this same record was mysteriously altered from the initial assigned Circuit Court Judge Kent Smith to Circuit Court Judge John Kelly Luther without

21

any explanation given.

75. Plaintiff proceeded to the Lafayette County Circuit Court Circuit Clerk's Office and began asking questions in to how this could have happened and who would have been able to change it, normal questions that should be expected of any concerned citizen. Plaintiff feels he exhibited a calm, non-confrontational approach to the questions he was asking, fully documenting his interaction.

76. Circuit Court Clerk, Jeff Busby got highly defensive when plaintiff began asking questions and advised the other clerks to not answer any of plaintiff's questions.

77. After admitting he had never seen or heard of the such happening, Busby gets on his cellphone and presumably calls the Lafayette County Sheriff, Joey East to report Plaintiff's presence at Lafayette County Circuit Court.

78. At that point Plaintiff leaves the Circuit Clerks Office and continues outside towards his vehicle. Around the same time that Plaintiff got situated in his vehicle, Defendant East pulls up initially blocking Plaintiff from reversing. Then East parks next to plaintiff, and their conversation ensues

79. Defendant East orders Plaintiff not to go back into Circuit Court unless he has something to file because he was "Disrupting their business".

80. Defendant East and the Circuit Clerk's Office should be compelled by this court to show cause as to his accusation of such as stated above due to the interaction being fully documented and recorded by the Plaintiff.

81. This major grievance was exacerbated to even higher levels on December 7th, 2021 when the Defendants, in particular Sheriff East, devised a plan to suppress and get rid of their problem after the plaintiff started asking questions into the matter at hand.

82. On December 7th, 2021, Plaintiff, his spouse, and minor child attend a late day doctor's appointment for the minor child. Upon returning home at approximately 5pm, Lafayette County Sheriff's Deputies pull up and proceed to informing plaintiff and his spouse that Communicare had filed an affidavit claiming Plaintiff was in need of mental health services.

83. The filed affidavit stated the following reasons Plaintiff should be involuntarily committed:

   - Goes into public places recording people
   - Paranoid and Delusional
   - Provoking people with his minor child
   - Not taking meds
   - And not getting medical help

84. Plaintiff was sent to the Tupelo Crisis Center just up the hill from the North Mississippi State Hospital where he sat deprived of his liberty from December 9th, 2021 until December 23rd, 2021.

85. Plaintiff would find out via phone call with Communicare on December 31st, 2021 that Defendant Alcorn was approached by Law Enforcement (Lafayette County Sheriff's Department and East) and even makes reference to statements from "Community Members" though none of these witnesses were ever identified. This establishes the framework of this being a Conspiracy between state actors and private citizens to deprive a citizen of his constitutional rights, in particular his 1st, 4th, 5th, and 14th Amendment Rights,

a violation of 42 USC 1985- Conspiracy to Deprive Rights charged to Defendants East, Alcorn, and Communicare. Admission to complaints passed to Defendant Alcorn by Lafayette County Sheriff's Department and Defendant East can be heard at **BANISH.ME/EXHIBIT-B**

86. The first stated reason for commitment on the Affidavit stated Plaintiff "Goes into public places recording people". This statement amounts to a blatant violation of Plaintiff's 1st Amendment Right which protects recording in public spaces. Plaintiff never went into public places to invade privacy of others or with the sole purpose of "recording people". As a credentialed member of the press being an independent investigative reporter/journalist, plaintiff would gather content for stories through accurately documenting his encounters through video or audio recording. More importantly, documenting interaction also doubled as a way for plaintiff to protect himself from the abominable lies, untrue insinuations, and complete character assassinations such as what transpired here. This statement alone amounts to a violation of Plaintiff's 1st Amendment Right charged to Defendant Alcorn, East, Lafayette County Sheriff's Department, Communicare, Lafayette County MS, and the State of MS.

87. The claim "goes into public places recording people" constitutes a separate claim against all named Defendants for Tortious Interference into Business based upon the intentional interference for a motion picture production company Plaintiff founded in 2020 called "Outlawed Productions LLC" in order to produce his personal story. Guarantees are made through the 1st Amendment to protect free speech and this extends to recording in public places.

88. The second stated reason for commitment on the Affidavit "Paranoid and Delusional" are non-factual, conclusory terms used which are defamatory in nature and untrue, in violation of MS Code Section 41-21-65 due to not containing specific factual descriptions of the behavior of the proposed patient, not being supported by observations of named witnesses, and not being stated in behavioral terms by it containing judgmental or conclusory statements. Plaintiff has never once seen or heard things which would make him be "delusional" as was reported to Defendant Alcorn by Defendant East, nor has Plaintiff ever been accused or told that he was "delusional" or "paranoid" prior to this set of events. Plaintiff stays on guard and protective due to a fundamental miscarriage of justice which occurred in 2017 which Defendant East is alleged to have had direct involvement in. These claims constitute a claim of Defamation of Character on Defendant Alcorn, East, Lafayette County Sheriff's Department, Communicare, Lafayette County MS, and the State of MS.

89. The third stated reason for commitment stated Plaintiff was "Provoking people with his minor child" but this was entirely fabricated by Alcorn and East. Plaintiff never once provoked anybody with his minor child. On one occasion Plaintiff had a mishap while flying a small aerial drone which sparked a major overreaction from Lafayette County Sheriff's Department while one of Plaintiff's minor children was with him observing. Due to the obnoxious overreaction, Plaintiff submitted a Freedom of Information Act request the very next day, September 29th, 2021, asking for the body camera of Deputy Dixon and all officer reports from all law enforcement officers present. Footage from plaintiff's point of view is viewable at **BANISH.ME/EXHIBIT-D**. This would amount to a separate Defamation of Character claim on Defendant Alcorn, East, Defendant Lafayette County Sheriffs Department, Communicare, Lafayette County, MS, and the State of MS.

90. Plaintiff states more than 8-months have elapsed and Plaintiff's request still hasn't been fulfilled due to Defendant East claiming the incident is "Under Active Investigation" by the US Attorney's Office for the Northern District of Mississippi regarding whether or not plaintiff would be required to hold a commercial license to fly a drone for personal/hobbyist reasons with his minor child present due to the fact that Plaintiff had previously identified himself as an independent investigative journalist. Therein lies a paradox because to even consider Plaintiff commercial and needlessly harass in such a way due to Plaintiff having Press Credentials, Defendant Lafayette County Sheriff's Department in turn fully acknowledges that Plaintiff is a credentialed member of the press which they had knowledge of beforehand. This in turn creates additional violations of Plaintiff's First Amendment Rights when factoring in the alleged reasons listed on the affidavit for commitment by abridging the rights of the press in an obnoxious attempt to suppress independent investigative journalism. This creates a paradox in that Defendant East and the Sheriffs Department acknowledge that Plaintiff is indeed a credentialed member of the press amounting to a 42 USC 1983 Claim based on a violation of Plaintiff's 1st Amendment Right to record in a public place while gathering content for a story as an independent Journalist/Reporter.

91. Plaintiff seeks an order from this court compelling the production of such information requested. This request is relevant to this complaint in that one of the false statements passed to Defendant Alcorn from Defendant East involved Plaintiff allegedly "provoking people with his minor child" which the requested body camera will show was a completely false statement made. This along with the additional false claims mentioned in this complaint amount to violations of the False Claims Act charged to Defendant East, Alcorn,

Lafayette County Sheriffs Department, Lafayette County MS, and State of Mississippi.

92. The fourth stated reason for commitment was "Not taking meds". This statement was unknown at the time and purely speculation, as Defendant Alcorn and Defendant East had no clue as to what medication, if any, Plaintiff was prescribed and had no way of knowing prior as to whether or not plaintiff was or was not taking any medication he may have been prescribed. A violation of MS § 41-21-73 (2) in that the Lafayette County Chancery Court, at the time of the hearing, never was presented nor asked for a record of all drugs, medication or other treatment that the respondent has received pending the hearing and simply accepted the allegations made via affidavit on their face without any evidence presented. It is important to note for this matter Plaintiff was advised in February of 2022 that it seemed he was misdiagnosed and in fact was not requiring of any medication by a Doctor at the East Mississippi State Hospital.

93. The fifth reason for commitment "And not getting medical help" is purely speculation, opinionated, conclusory, and completely judgmental in nature as it is not supported by any medical evidence that Plaintiff ever once needed medical help to begin with. Plaintiff in the course of his business and civil duties never engaged in any criminal activity, and the acts of plaintiff were constitutionally protected from hinderance or interference by the Government.

94. Defendants Lafayette County, East, Alcorn, and Communicare should be compelled by this court to show cause and evidence they possessed at the time of their claims levied against the Plaintiff as well as Identify any and all "community members" whom Defendant Alcorn specifically made mention of.

**95.** The affidavit did not meet the prerequisites under State Law in that it didn't list out any named witnesses to the attributable causes for action. Nonetheless in the early afternoon on December 7, 2021 the affidavit is filed in Lafayette County Chancery Court and a writ to take plaintiff into custody was immediately signed off on by Chancellor Lawrence Little. This is a violation of MS § 41-21-67 which states that when the affidavit fails to set forth factual allegations and witnesses sufficient to support the need for treatment, the chancellor shall refuse to direct issuance of the writ. This is not a choice of the court, rather it is an obligation of the court. The Non-Typical affidavit for commitment filed is attached hereto as an exhibit and also viewable online at **BANISH.ME/EXHIBIT-C.** This violation shall count as separate counts of negligent infliction of emotional distress (tort of outrage), tortious interference into business, and familial interference charged to all named Defendants.

**96.** On January 4, 2022, just five days after speaking with Defendant Alcorn regarding the source of the information given to her, plaintiff filed an "Affidavit of Truth" against Sheriff East in an attempt to add clarity to the events plaintiff claims the Lafayette County Sheriff has played a part in or had direct knowledge of. This affidavit required a written rebuttal from the Sheriff on any part he disagreed with and clearly established the time frame and repercussions for failure to rebut. However, the Lafayette County Sheriff chose not to rebut the affidavit of truth in turn tacitly admitting to all claims spelled out within. Affidavit of truth with proof of service attached and can be read at **BANISH.ME/EXHIBIT-E**

**97.** Plaintiff had to reschedule his originally scheduled appointment at Communicare on the first week of January due to scheduling error associated with his spouse just starting a new full-time job, having one vehicle to share at the time, and plaintiff having 3 minor children

in his care.

98. On January 31st, 2022, Plaintiff voiced complete disgust regarding the exploitation of the State of Mississippi's mental health laws to a Communicare employee by the name of Susan Beard. Beard then calls back leaving a voicemail stating plaintiff would need to submit any complaint in writing to the director of the Facility, Dr. Sandy Rogers, and to include in that any demand for preservation of evidence.

99. On February 2nd, 2021 Plaintiff sent a detailed final demand via email to Lafayette County Board Attorney David O'Donnell in hopes of compelling compliance on public record act requests for body camera footage and officer statements from September 2021 LCSO interaction outside of Lafayette County Justice Court over the flying of a drone for hobbyist purposes.

100. On February 4th, 2021 Plaintiff called Lafayette County Sheriff's Office for Scott Mills to inform him that according to the FAA's website, he was considered a hobbyist therefore not requiring a Part 107 Commercial License.

101. Early on in the afternoon on February 7th, 2022 at the conclusion of speaking with chancery court clerk Sherry Wall, Plaintiff filed and served an 8-page formal grievance letter with Chancery Judge Lawrence Little's chambers and Communicare's executive director Dr. Sandy Rogers. 8-page formal complaint listed as Exhibit F and viewable online at **BANISH.ME/EXHIBIT-F**.

102. On multiple prior occasions Plaintiff requested a hearing before the presiding Chancellor, Judge Lawrence Little, attempting to raise the erroneous errors and retaliatory

measures taken towards Plaintiff by Defendants. However on no occasion was Plaintiff granted a hearing to raise his grievances. As such Lafayette County Chancery Court shall be charged with Negligent infliction of emotional distress, Intentional Infliction of emotional distress, along with violation of 42 USC 1983 under the 14th amendment based upon a refusal to afford the equal protections of the law.

103.  On February 9th, 2022, Plaintiff had requested a financial disclosure on a 501(c)3 organization co-founded by Defendant East and Chief Deputy Scott Mills (Lafayette County Law Enforcement Officers Association). The purpose was to screen such disclosure for any erroneous findings, defects, or contributions by select individuals. Plaintiff was advised he should receive a copy by the middle of the next week and this never happened.

104.  It just so happened to be that same day, February 9th, 2022, that Communicare Employee Susan Beard proceeded to file another affidavit for commitment of plaintiff claiming Plaintiff had refused to attend a scheduled appointment. However, recorded phone calls with Communicare paint an entirely different picture, as Plaintiff simply wanted the violations of State Law addressed prior to "returning to the den of the same lion that just maimed him".

105.  On February 10th, 2022, upon returning home close to midnight from his spouse, Madelyn, being hospitalized due to pregnancy complications, Lafayette County Sheriff's Deputies light up the yard with blue lights and take the Plaintiff once again into custody for the newest affidavit for commitment filed by Communicare employee Susan Beard.

106.     Plaintiff was held at the Lafayette County Detention Center confined to a jail cell for 24-hours a day for nearly 6-days without any rights afforded to him and then shipped 2.5 hours across the state to the East Mississippi State Hospital in Meridian, MS on February 16th, 2022.

107.     That Lafayette County, Mississippi falls into the Catchment Area of the North Mississippi State Hospital in Tupelo, Mississippi. Nonetheless Plaintiff would sit deprived of his liberty and basic freedoms for the next 30-days' time at the East Mississippi State Hospital in Meridian, MS, a violation of MS § 41-21-73.

108.     Respondent requested a hearing since the moment he was taken into custody for the writ of commitment executed on February 10th, 2022. Each time he asked for a hearing Respondent was advised that he was **not** entitled to receive a hearing, although a single page had already been marked that respondent did receive an in-person hearing, and this simply was never the case. This amounts to separate violations of MS § 41-21-73, MS § 41-21-74, and MS § 41-21-104 by Defendants Lafayette County Chancery Court, Communicare, MS Department of Mental Health, and Defendant Sherry Wall.

109.     All that occurred sent Plaintiff's Spouse into preterm labor and she gave birth to a son via emergency C-section on February 17, 2022 at just 28-weeks gestational age and weighing 2lb 11oz.

110.     Plaintiff tried on multiple attempts to compel Cooperation to see and care over his spouse and highly premature newborn child but was denied the ability to leave for emergency purposes due to being confined at The East MS State Hospital.

111. Plaintiff was advised on arrival by the Doctor and Staff of the East Mississippi State Hospital that he was not entitled to any type of hearing which would go to his release until he had been hospitalized for 21-days' time.

112. During the first 27 days of the 30-Day Involuntary Commitment, Plaintiff was advised by the primary Physician/Psychologist that he was of the medical impression Plaintiff was in no need of medication and that the previous diagnosis had likely been misdiagnosed.

113. It wasn't until approximately 3-days prior to discharge that Plaintiff was recommended a medication to serve as a mild mood stabilizer. Plaintiff stands of the belief that this was used as a prop at the very end attempting to justify this particular 30-day confinement/loss of liberty.

114. It is alleged that Ill-will and retaliation for filing the 8-page complaint served on the court and Communicare on February 7th, 2022 sourced the latest affidavit for involuntary commitment being filed on February 9th, 2022.

115. Lafayette County Chancery Court through its Chancery Clerk Sherry Wall proceeded to pick and choose who the "Special Master" would be, who the "Respondent's attorney" would be, as well as who the Doctor and Nurse Practitioner would be to conduct a "Virtual" examination. This tilts the tables fully to Lafayette County's discretion and call on selecting their own staff and their own preferred outcome on a highly contested matter involving the liberty of a citizen.

116. After unfairly denying, without reason, an application to proceed in forma pauperis

for a separate matter less than two months prior due to plaintiff's financial situation rendering him indigent, Chancery Clerk Sherry Wall declares on this cause that Plaintiff is Indigent and proceeds to choosing the individuals to interview plaintiff at the jail, subsequently authorizing payment to each out of the county funds. This demonstrates an indifference shown towards plaintiff's rights at the expense of tax-payer dollars and the Plaintiff by selectively applying or denying indigent status in ways that solely benefit its present task at hand.

117.     MS § 41-21-71 states if the respondent is determined to be in need of mental health treatment, the clerk shall immediately set the matter for hearing. The hearing shall be set within seven (7) days of the filing of the certificates unless an extension is requested by the respondent's attorney. In no event shall the hearing be more than ten (10) days after the filing of the certificates. Affording the Respondent a hearing is not discretionary. It is a requirement of Due Process to all citizens prior to the deprivation of their liberty. However, this was overlooked and ignored.

118.     Further elaborating on this topic, MS § 41-21-73 (2) states "The respondent must be present at the hearing unless the chancellor determines that the respondent is unable to attend and makes that determination and the reasons therefor part of the record". Further, the court, at the time of the hearing, shall be presented a record of all drugs, medication or other treatment that the respondent has received pending the hearing, unless the court determines that such a record would be impractical and documents the reasons for that determination. The court was never presented a record of all drugs, medication, or other treatment for the first commitment proceeding in December of 2021, and Plaintiff was denied a hearing all together for second commitment proceeding in February of 2022.

119.    MS § 41-21-73 (3) states "The respondent shall have the right to offer evidence, to be confronted with the witnesses against him and to cross-examine them and shall have the privilege against self-incrimination. The rules of evidence applicable in other judicial proceedings in this state shall be followed. A representative from a treatment facility shall be present at the hearing to explain possible treatment options to the respondent". Yet none of MS § 41-21-73 (3) held applicable to these proceedings as Respondent was never given the right to offer evidence, be confronted with witnesses against him, and cross-examine them. Further no representative from a treatment facility was present at hearing to explain possible treatment options to  respondent."

120.    MS § 41-21-73  (4) Treatment before admission to a state-operated facility shall be located as closely as possible to the patient's county of residence and the county of residence shall be responsible for that cost. Admissions to state-operated facilities shall be in compliance with the catchment areas established by the State Department of Mental Health. The Catchment area for Lafayette County, MS would have been the North MS State Hospital in Tupelo, MS, NOT the East MS State Hospital in Meridian, MS.

121.    MS § 41-21-74 (3) states "The respondent may be returned to the treatment facility as soon thereafter as facilities are available. The respondent may request a hearing within ten (10) days of his return to the treatment facility." At the facility, Plaintiff was advised MS Department of Mental Health policies and state law afforded a hearing after 21-days, however according to State Law this was incorrect.

122.    MS § 41-21-74 (4) states "An outpatient shall not have or be charged for a recommitment process within a period of twelve (12) months of the initial outpatient

order.".  Respondent understands this for the way it reads.  There may not be another recommitment process within 12 months of initial commitment, however back to back commitments occurred within 63 days.

123.    The fact that listed Defendants utilized involuntary commitment TWICE over a span of approximately two months' time when he never posed as a danger or threat to himself or others further demonstrates an intentional, deliberate indifference shown to Plaintiff's Constitutional Rights far above and beyond that of plain negligence.  Particularly when factoring in the false statements made which led to Plaintiff being restrained of his liberties and other rights on two separate occasions forcing him to miss the birth of his child whom was born extremely premature due to the events which took place hospitalizing the plaintiff's wife.

124.    Finally, MS § 41-21-104 states among others listed below that "The person subject to commitment must be afforded the due process to which he or she is entitled under Chapters 21 and 31 of Title 41, Mississippi Code of 1972".  Plaintiff reasserts a deliberate indifference to his due process rights was shown and demonstrated by the Defendants.

125.    Plaintiff's newborn child was considered a Micro-Preemie when born, faced numerous medical issues to date with more undoubtedly on the horizon. No time taken can be given back, however, a proper ruling and judgement by this court can help ensure no other potential pregnancy complications result in any more newborns being born so premature and fragile.

126.    As a result of all listed violations by the listed Defendants, Plaintiff has incurred

substantial financial burden, and Plaintiff's newborn child has been ailing in health more recently being transferred to LeBonheur Children's Hospital in Memphis TN due to his lungs not developing from being born as premature as he unfortunately was.

## CLAIMS

### COUNT ONE - DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

*Violation of the Fourth and Fourteenth Amendments – FALSE ARREST- pursuant to 42 U.S.C. §1983*
*Against Defendants Lafayette County Sheriff's Department and East*

127.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

128.     Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

129.     WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

### COUNT TWO - DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

*Violation of the First and Fourteenth Amendments –UNLAWFUL DETENTION-*
*Pursuant to 42 U.S.C. §1983*
*Against Lafayette County Sheriff's Department and State of Mississippi*

130.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

131.     Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

132. WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court may award

## COUNT THREE - DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
*Violation of the First and Fourteenth Amendments – FREEDOM OF SPEECH*
*Pursuant to 42 U.S.C. §1983*
*Against Defendants East, Lafayette County Sheriffs Department, Lafayette County MS, the State of Mississippi, and Lafayette County Chancery Court*

133. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

134. Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

135. WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court may award

## COUNT FOUR - DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
*Violation of the First and Fourteenth Amendments – FREEDOM OF SPEECH*
*Pursuant to 42 U.S.C. §1983*
*Against all named parties*

136. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

137. Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

138.     WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court may award

## COUNT FIVE - DENIAL OF DUE PROCESS OF LAW
*Violation of the Fifth and Fourteenth Amendment pursuant to 18 U.S.C. § 242*
*Against all except for Communicare and their listed employees*

139.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

140.     Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

141.     WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT SIX - CONSPIRACY TO DEPRIVE RIGHTS
*Violation of the Fourteenth Amendment pursuant to 42 U.S.C. §1985*
*Against Defendants East, Alcorn, Lafayette County Sheriffs Department, Communicare, and Lafayette County Chancery Court*

142.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

143.     Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages as a result of such conduct.

144.    WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT SEVEN - DEPRIVATION OF DUE PROCESS
*Violation of the Fourteenth Amendment pursuant to 42 U.S.C. §1983*
*Against all named parties*

145.    The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

146.    Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

147.    WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT EIGHT - VIOLATION OF FALSE CLAIMS ACT
*31 U.S.C. §§ 3729 – 3733*
*Against Defendant East, Alcorn, Lafayette County Sheriffs Department, Lafayette County MS, Communicare, and State of Mississippi*

148.    The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

149.    Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

150.    WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court

finds he is entitled.

## COUNT NINE - FALSE IMPRISONMENT

*Violation of the Fourth and Fourteenth Amendments Pursuant to 42 U.S.C. §1983*
*Against Defendants East, Lafayette County Sheriff's Department, Communicare, MS Department of Mental Health*

151.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

152.     Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

153.     WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT TEN - FALSE IMPRISONMENT

*Mississippi State Law Claim*
*Against Defendants East, Lafayette County Sheriff's Department, Communicare, MS Department of Mental Health, and Lafayette County Chancery Court*

154.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

155.     Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

156.     WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT ELEVEN - WRONGFUL INTERFERENCE WITH FAMILIAL RELATIONSHIPS
*Mississippi State Law Claim*
(Against All Named Defendants)

**157.**    The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

**158.**    Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

**159.**    WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any other, different, and further relief which this Court finds he is entitled.

## COUNT TWELVE - TORTIOUS INTERFERENCE INTO BUSINESS
*Mississippi State Law Claim*
Against Defendants Lafayette County Sheriff's Department, East, Alcorn, and Communicare

**160.**    The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

**161.**    Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

**162.**    WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

41

## COUNT THIRTEEN - DEFAMATION OF CHARACTER
*Mississippi State Law Claim*
(Against All Named Defendants)

163.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

164.     Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

165.     WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT FOURTEEN - DEFAMATION OF CHARACTER
*Mississippi State Law Claim*
(Against All Named Defendants)

166.     The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

167.     Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

168.     WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT FIFTEEN – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### TORT OF OUTRAGE- STATE LAW CLAIM
Against Defendants East, Beard, Alcorn, Rogers, Lafayette County Sheriffs Department, Communicare, and Lafayette County Chancery Court

169.    The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

170.    Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

171.    WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT SIXTEEN – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### TORT OF OUTRAGE- STATE LAW CLAIM
Against Defendants East, Beard, Alcorn, Rogers, Lafayette County Sheriffs Department, Communicare, MS Dept of Mental Health, and Lafayette County Chancery Court

172.    The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

173.    Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

174.    WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT SIXTEEN – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *TORT OF OUTRAGE- STATE LAW CLAIM*
### Against Defendants East, Beard, Alcorn, Rogers, Lafayette County Sheriffs Department, Communicare, and Lafayette County Chancery Court

**175.** The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

**176.** Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

**177.** WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT SEVENTEEN – ACTION FOR NEGLECT TO PREVENT
### *42 USC 1986*
### Against Defendants O'Donnell, Wall, Busby, State of Mississippi

**178.** The Plaintiff re-alleges and incorporates by reference all above paragraphs with the same force and effect as if fully set out in specific detail herein.

**179.** Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

**180.** WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## PRAYER FOR INJUNCTION AND RELIEF

181.    Based on the legal and factual allegations stated herein, the Plaintiff respectfully prays that this Court will assume jurisdiction of this action and after jury trial, provide relief as follows:

182.    Render a judgment finding the Defendants jointly and/or severally liable for the aforementioned causes of action and find for the plaintiff an award of compensatory damages in the amount TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000) due to the past, present, and future damages incurred along with the long-term effects caused by Defendants actions.

183.    Render a judgment finding the Defendants jointly and/or severally liable for the aforementioned causes of action and award Plaintiff Punitive Damages in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000) or an adjusted amount that a jury see fit to serve as punishment for the actions of Defendant's as well as serving a future deterrent to curb and prevent future unlawful and unconstitutional actions detrimental to the Constitution and the Civil Rights of all citizens.

184.    Render a judgment permanently enjoining Defendants from enforcing their customs, policies, patterns, and practices as described herein that violate constitutional rights.

185.    Retaining jurisdiction over this action and ordering the Defendants to implement and enforce proper policies and practices including appropriate training and supervision to protect individuals from infringement of their constitutional rights.

186.     Pursuant to 42 U.S.C. § 1988, issue an order requiring Defendants to pay for all litigation costs, expenses and reasonable attorney's fees associated with the filing of this action;

187.     Grant Plaintiff Declaratory Relief into the matter regarding the unconstitutionality of the State of Mississippi's Mental Health Laws, declaring them unconstitutional on their present face.

188.     Grant to the Plaintiff any such and all other, further, different, general, or special relief as in equity the Plaintiff may be entitled.

## WHEREFORE ALL PREMISES CONSIDERED

Plaintiff prays this court issue an order of protection stipulating conditions that will prevent further injury or harassment by any of the named Defendants into this ongoing legal matter yet to be decided. Plaintiff asks this court to bind all other matters at hand over to a jury to hear the facts and decide all merits of this cause of action brought forth.

**Respectfully Amended and Submitted this 13th Day of June 2022**

Matthew Reardon
Plaintiff (Pro Se)
117 CR 401
Oxford, MS 38655
662-230-1460
legal@mattreardon.com

**Justice Court Records**

DO   dodonnell@claytonodonnell.com
        Fri, 03 Dec 2021 4:32:51 PM -0600

   To  "Matt Reardon" <matt@ridingwiththeoutlaw.com>

   Cc  "Jill Carwyle" <JCarwyle@lafayettecoms.com>,
        "Lisa Carwyle" <LCarwyle@lafayettecoms.com>, "Joey East" <jeast@lafayettesheriff.net>

  Tags  🗘
Security  🛡 TLS  <u>Learn more</u>

Matt:

I have been made aware of your unsuccessful efforts today to retrieve a copy of bail bond records in a Justice Court criminal case involving another individual. I am told that you had misspelled the name of the individual and that is why the clerk could not locate the record.

The clerk's office has now found the record and it is available for pick up. For future reference, there is a publicly accessible computer terminal at the Justice Court clerk's office which you can use to search court records. If you want copies of any record, the clerk will charge 15 cents per page which is the default rate under the Public Records Act.

Finally, the clerks report that you have been verbally abusive toward them and that the behavior seems to be increasing in frequency and intensity. There is no need for behavior that disrupts court business and decorum and, if it continues, the judges of the court may pursue their options to address the behavior. I therefore believe that your use of the public computer terminal will work for everyone.

David D. O'Donnell
Clayton O'Donnell PLLC
1403 Van Buren Avenue
Suite 103
Oxford, Ms. 38655
dodonnell@claytonodonnell.com
1(662) 234-0900

**PLEASE SERVE THE FOLLOWING BY CERTIFIED MAIL:**

L 21- 494

## AFFIDAVIT/DECLARATION OF TRUTH

To: **JOSEPH B EAST SHERIFF OF LAFAYETTE COUNTY 711 JACKSON AVE E, OXFORD, MS 38655**

I, **MATTHEW OLIVER REARDON** the undersigned, make this Affidavit/Declaration of Truth of my own free will, and I hereby affirm, declare and swear, under my oath and under the pains and penalties of perjury under the laws of the United States of America and of this state, that I am of legal age and hereby attest that the statements, averments and information contained in this Affidavit/Declaration are true and correct to the best of my knowledge.

This Affidavit/Declaration of Truth is lawful notification you, and is hereby made and sent to you pursuant to the Federal Constitution, specifically the Bill of Rights, in particular, Amendments I, IV, V, VI, VII, IX, X, XIV; and The Bill of Rights detailed in Article 3 of the Mississippi Constitution specifically sections 11, 12, 13, 14, 17, 23, 24, 25, 26, and 26-A. This Affidavit/Declaration of Truth requires your written rebuttal to me, in kind, specific to each and every point of the subject matter stated herein, within 15 days, via your own sworn and notarized affidavit, using true fact, valid law and evidence supporting your rebuttal of the specific subject matter stated in this Affidavit/Declaration. You are hereby noticed that your failure to respond, as stipulated, and rebut, with particularity and specificity, anything with which you disagree in this Affidavit/Declaration, is your lawful, legal and binding tacit agreement with and admission to the fact that everything in this Affidavit/Declaration is true, correct, legal, lawful, and fully binding upon you in any court in America, without your protest or objection and that of those who represent you.

1. Acts committed by you, **JOSEPH EAST**, acting as **SHERIFF OF LAFAYETTE COUNTY, MS** either supports and upholds the Constitutions, national and state, or oppose and violates them.

2. You have taken an oath to support and uphold the national and state Constitutions and are constitutionally mandated to abide by that oath in the performance of your official duties.

3. You have no constitutional authority, or any other form of valid, lawful authority, to oppose and violate the very documents to which you swore or affirmed your oath and under which you were delegated by the people the limited authority to conduct the duties of your office.

4. The above three positions are true, factual, lawful and constitutionally ordained.

5. Through this Affidavit/Declaration of Truth, you are hereby noticed of your alleged violations of the below mentioned sections of the Mississippi Constitution along with supporting facts to corroborate the claims that are being made

You, Joseph B East, acting as Sheriff, swore an oath to uphold and support the Constitution of the United States of America and the Your State Constitution, and pursuant to your oath, you are required to abide by that oath in the performance of your official duties. You have no Constitutional or other valid authority to defy the Constitutions, to which you owe your limited authority, delegated to you by and through the People, and to which you swore your oath; yet, by your actions against the People you have violated those oaths and engaged in myriad instances of incompetence, negligence, dereliction of duty, malfeasance, sedition, insurrection, treason and criminal, unconstitutional behavior rendering you unfit to hold public office.

However, despite the above-stated factual, lawful positions, your unconstitutional actions, as described throughout this Affidavit/Declaration of Truth, clearly demonstrate how you have violated all of the above lawful positions, the Constitutions, your oath of office, acted against the public good by knowingly and willfully violating the public trust and committing sedition and insurrection. Pursuant to your unlawful and unconstitutional actions, you have invoked the self-executing Sections 3 & 4 of the 14th Amendment to the National Constitution, thereby have lawfully vacated your office and forfeited all benefits thereof, including salary and pension. Please note that, as stated above and below, if you fail to specifically rebut, in kind, any of the charges, claims and positions set forth in this Affidavit/Declaration, then, you tacitly

admit to them, and these admissions will be lawfully used against you. The following paragraphs and others throughout this Affidavit/Declaration describe some of your unlawful, unconstitutional actions, which have harmed myself and others:

**Based upon a report created on May 30, 2017, it was stated that on May 24, 2017 Jarrett Bundren, an investigator with Lafayette County Sheriff's Department received via a phone call stating that I, Matthew Reardon, was making threats towards an individual by the name of Todd Lynch.** Affiant has effortlessly made the claim that this entire fiasco amounted to a crime alleged that was never truly committed in order to suppress and prevent an outspoken conservative, 2nd amendment activist from speaking at a public forum which he was slotted in advance to speak at on June 6, 2017; the day that just so happened to be election day for Robyn Tannehill. Completely violating the constitutional rights of another by way of a knowingly false charge which led to false imprisonment was not enough for Lafayette County Officials, as they deprived nearly all procedural due process rights which all accused are to be afforded in order to contrive a conviction stemming from intimidation and fear, not facts and evidence. Affiant was held illegally confined in the Lafayette County Detention Center from the time of his arrest, May 26 2017 until he received an initial/bond hearing on May 30 2017. This amounted to nearly 96 hours before movant was brought before a judge, twice the maximum length allowable under the Mississippi Rules of Criminal Procedure which had recently been updated prior to affiant's arrest and incarceration to follow.

**MRCP Rule 5.1(b)(3) states if a person is taken into custody, the person shall be taken without unnecessary delay, and in no event later than forty-eight (48) hours after arrest, before a judge who shall proceed with an initial appearance.**

a) If the person arrested is not taken before a judge within forty-eight (48) hours, the person detained shall be released on execution of an appearance bond in the minimum amount set pursuant to Rule 8 and directed to appear at a specified time and place.

b) Affiant tried to assert his complete innocence through a bill of sale proving not only that it was an impossibility for him to have committed the crime charged, but that in fact no crime was committed. Judge Carolyn Bell cut Affiant off from speaking on two separate occasions to stating he had "the right to remain silent" just prior to setting a completely outrageous appearance bond.

c) Judge Bell never cared to advise me that I had the right to a Preliminary Hearing. MRCrP 8.1 lists a table recently updated approximately a month prior showing ranges for types of crimes.

d) A crime receiving a maximum incarceration of 10-years should receive a $5,000-$50,000 Appearance Bond. Affiant's alleged crime received a maximum 5-years incarceration yet was set at $150,000. **Due to it already going well beyond 48-Hours before affiant was afforded an initial hearing, Judge Bell was obligated to issuing an appearance bond of $5,000 or releasing affiant on his personal recognizance.**

e) Affiant makes claims of improper influence being the key factor in what had occurred and that this move had likely been decided upon just prior to the initial hearing commencing

Affiant reasserts his claims of needing to get his daughter out of an ill-brought, fraudulent, and deceptive chancery court matter which just so happened to be coincidentally piled on at the same time to further stack the deck. Upon pleading out following extended mental torture, Lafayette County Officials insisted on a banishment being a stipulation in order to get rid of their problem and source of liability for at least the newly elected mayor's first term, along

with fully disarming him, and insisting upon the signing of a covenant to not sue Lafayette County and Oxford employees and officials, Sheriff's Department, and The Lynch's. However, exculpatory evidence of innocence existed all along, and that a preliminary hearing was never afforded. Bond was set disproportionately and unconstitutionally high in a clear violation of the 8th Amendment to the Federal Constitution as the bond set at $150,000 was three times higher than the established guidelines stated even for an alleged crime that could see twice the potential length of incarceration if found guilty. A motion for Habeas Corpus seeking bail reduction was filed June 5, 2017 alleging that Affiant was illegally confined and restrained of liberty in the Lafayette County Detention Center with bail in the amount of $150,000 and that confinement was illegal because bail was excessive, oppressive and beyond the financial means of Affiant or his family and loved ones. This Habeas Corpus Petition placed Lafayette County on notice of violations of the Eighth and Fourteenth Amendments to the United States Constitution and §§ 26 and 29 of the Mississippi Constitution at that time. At the bare minimum, this motion commanded that the Sheriff produce the affiant and show good cause why he should not be discharged from such illegal confinement immediately or have his bond reduced to a constitutional amount. The Habeas Corpus was approved to proceed in forma pauperis on June 7, 2017. However, the approved petition was never proceeded upon and coincidentally Affiant was never even informed that this petition was filed on his behalf much less approved. Approximately 2 months after plea was entered, A Psychologist in Tupelo, whom was the referring doctor for Lafayette County Chancery Court, notated coercion on his report as the chief reason for such plea. In the following months and years upon the discovery of additional facts and evidence, Lafayette County primarily through its most Sheriff Joseph East has refused to provide equal protections under its laws

and stands accused of continued intentional deprivation of the Affiant's civil rights in a continued insistence on covering its tracks and shifting guilt with the help of malicious prosecution and preferential prosecution through the knowing introduction and use of perjurious testimony in order to contrive another highly immoral, unlawful, and unconstitutional conviction. Through a plethora of discovered evidence that has surfaced, it would more than appear that East has had direct involvement in all that has transpired dating back to May of 2017 while under his prior command and title of Chief of Police for Oxford Police Department. Affiant states he had no prior run in's nor issues with East prior to his return to Oxford in 2020, and that evidence now demonstrates an ill intent and foul play clearly demonstrated by East and directed at affiant unbeknownst at the time to him. **Affiant awaits his guilty plea being declared involuntary due to a complete denial of his procedural due process rights, guaranteed by the United States and State of Mississippi Constitutions. Affiant claims this deprivation of rights due to all accused in combination with the coercion tactics places Lafayette County and its Officials in Direct violation of State and Federal Law, making his plea involuntary and void and a violation of State Law which the State and County should never have been allowed to be in receipt of in the first place.**

That on July 7, 2020 Affiant filed his post-conviction relief in Lafayette County Circuit Court seeking complete reversal of his plea based on stated violations he became aware of. The judge assigned was Judge John Kelly Luther. On July 30, 2020 Circuit Court Judge Kelly Luther **DENIED** affiant's motion for relief which was brought with merit, in good timing, and in the correct court and jurisdiction. Affiant alleges that his post-conviction relief motion was prejudicially denied with biasness and favorability shown to the respondent, as the grounds on which post-conviction relief was brought along with the alleged fraud conducted by the State and

Lafayette County not only warranted but turned highly prejudicial against the affiant when county officials contrived a fraudulent conviction in 2017 and beyond negligent and in fact injurious upon the affiant when Lafayette County Circuit Court refused to hold an evidentiary hearing or look at any fact stated when constitutional rights violations through complete procedural due process rights were alleged amounted to even more deprivation and even what now is alleged as a complete chilling of constitutional rights of all citizens through a complete refusal of the equal protections of the law. Up until 8/12/2020, the assigned judge on the post-conviction relief was Judge Kent Smith. However, Judge John Kelly Luther continued showing an interest in affiant's matters by way of coming in to DENY each motion submitted despite the assignment of the case belonging to Kent Smith. Affiant filed a motion for recusal on 8/12/2020 and upon submission of this motion, the official record was ALTERED to then reflect John Kelly Luther as the assigned judge. This was certainly a rather large cause for concern.

Between July, 2021 and August, 2021, I, Matthew Oliver Reardon, had obtained press credentials, further providing official notice that I was a recognized and credentialed Reporter/Photographer/Journalist as a member in good standing with the Constitution First Amendment Press Association for independent work in journalism and reporting. It was around this time that Lafayette County officials appeared as if their authority had been challenged, however it begins to become clear that a clear abuse of power by Local Government Officials would be the culprit. A simple, basic understanding and knowledge of our Constitutional rights yields the fundamental right to petition the Government for Redress is and always has been inherently vested in, and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole. Furthermore, the people of this state have the inherent, sole, and exclusive right to regulate the

internal government and police thereof. This is a guaranteed right of all citizens of the state under Article 3 Section 6, yet another basic right requiring no credentials

On 11/4/2021 Affiant went to trial for 9 separate charges placed against him by Lafayette County Sheriff's Department and his ex, Phyllis "Liz" Crowder. 2 of the 9 charges came from a situation resulting in an alleged Disorderly Conduct and Resisting Arrest December 27, 2020 an email was sent to Sheriff East with "Criminal Conspiracy" in the subject like reporting alleged crimes involving the harboring and exploitation of Affiant's firstborn child (LER) which was opened approximately 2-hours later by the Sheriff. An investigation and assistance in stopping it was requested. Yet no response came from Sheriff East and this is the sole reason that brought affiant to the Sheriff's Department seeking assistance of the sheriff due the alleged crimes continuing to be committed. Affiant claims the complaints alleged were ill-brought, retaliatory, and relied upon mob-domination and the knowing use and introduction of perjured testimony by Lafayette County Sheriffs Department; in particular Deputies Dixon and Tidwell; and that both perjurious and defamatory statements were given under oath by the Lafayette County Sheriff Joey East. Affiant attests that a sloppy, inconsistent investigation attributed to three of the nine charges alleged by Deputies Beavers and Williford, and that evidence was never properly preserved by Lafayette County Sheriff's Department for the purposes of trial.

On December 3, 2021 Affiant filed a cover page and motion seeking complete dismissal of conviction rendered and citing well cited and established federal and state law supporting his position that his Due Process Rights had again been violated by the county and that the new convictions must be set aside. On December 6, 2021, Affiant had discovered that the assigned

judge (Kent Smith) had once again been changed in the system to reflect John Kelly Luther. In a non-threatening, non-accusatory way affiant simply tried to get an understanding of where or who could be responsible for this important record supposedly randomly assigned via algorithm changing. Circuit court clerk Jeff Busby got highly defensive and advised Chyna Sinervo to not answer any of affiant's questions, when affiant was simply fulfilling his civil duty in petitioning the government for redress of a major grievance. At this time Busby gets on his cell phone and presumably contacts Sheriff Joey East who within approximately 5-minutes time is captured on video pulling up, getting out of his car, and telling affiant to not go back into circuit court unless he had something to file because he was "disturbing their business". The following day, December 7, 2021 East reported to Communicare employee Rachel Alcorn knowingly false and damning statements in order to get Communicare to seek Judicial Commitment of affiant based on the lies given. The affidavit is approved and signed off by Judge Lawrence Little and immediately after, two deputies go on the hunt to find and take affiant into custody on the newly signed writ. This happens shortly after as Affiant, his wife, and stepdaughter arrive home and is captured on video. Affiant states the Judicial Commitment was fraudulent and stemmed from false information reported by Lafayette County Sheriffs Department and it's Sheriff Joey East in order to cover up a matter of concern which affiant was seeking answers to, and that this particularly filed matter in circuit court is a matter of interest to the Lafayette County Sheriff adding motive behind the highly immoral move involving the communication of lies to Alcorn. This was a dangerous attack on the freedoms and liberties of a private citizen and member of the press during the commission constitutionally protected activity.

**Sheriff Joseph B, East, you are alleged to be in violation of your oath of office, the national and state Constitutions, and in clear violation of the following laws/statutes:**

1) **Section 802 of the Patriot Act which clearly defines a domestic terrorist.**

2) Title 4 U.S.C. 101 - Oath by members of legislatures and officers.

3) Title 18 U.S.C. section 241 - Conspiracy against rights.

4) Title 18 U.S.C. section 242 - Deprivation of rights under color of law.

5) Title 18 U.S.C. 1038 - False information and hoaxes.

6) Title 18 U.S.C. 1001 - statements or entries generally.

7) Title 18 U.S.C. - 1503 influencing or injuring officer or juror generally.

8) Title 18 U.S.C. section 1512B - Engages in misleading conduct.

9) Title 18 U.S.C. section 2071 - concealment, removal, or mutilation generally.

10) Title 26 U.S.C. section 7214 - offenses by officers and employees of the United States.

11) Title 42 - U.S.C. section 1983 - Civil rights action for deprivation of rights.

12) Title 42 U.S.C. section 1985 (3) - conspiracy to interfere with civil rights.

13) Title 42 U.S.C. 2000a (a). Civil rights act of 1871,

14) Title 42 U.S.C. section 1986 - Action for neglect to prevent

Section 802 of the USA PATRIOT Act (Pub. L. No. 107-52) Expanded the definition of terrorism to cover ""domestic,"" as opposed to international, terrorism. A person engages in domestic terrorism if they do an act "dangerous to human life" that is a violation of the criminal laws of a state or the United States, if the act appears to be intended to: (i) intimidate or coerce a civilian population; (ii) influence the policy of a government by intimidation or coercion;

Lastly, current policing, fining, arrests and harassment throughout Lafayette County, MS is in violation of not only First Amendment "abridging the right of people to peaceably assemble" but more narrowly: **Title 18 U.S.C., Section 242- Deprivation of Rights Under Color of Law:** Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory,

Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

Due to your unconstitutional actions and draconian measures as described throughout this Affidavit/Declaration, you have invoked the referenced Sections 3 & 4 of the 14th Amendment. As such you have lawfully vacated your office and forfeited all benefits thereof, including salary and pension.

Lawful notification has been provided to you stating that if you do not rebut the statements, charges and averments made in this Affidavit/Declaration, then, you tacitly agree with and admit to them. Pursuant to that lawful notification, if you disagree with anything stated under oath in this Affidavit/Declaration of Truth, then rebut to me that with which you disagree, with particularity, within (15) fifteen days of receipt thereof, by means of your own written, notarized affidavit of truth, based on specific, true, relevant fact and valid law to support your disagreement, attesting to your rebuttal and supportive positions, as valid and lawful, under the pains and penalties of perjury under the laws of the United States of America and the State of Mississippi. An unrebutted affidavit stands as truth and fact before any court. Your failure to respond, as stipulated, is your tacit agreement with and admission to the fact that everything in this Affidavit/Declaration of Truth is true, correct, legal, lawful, and is your irrevocable admission attesting to

this, fully binding upon you in any court of law in America, without your protest, objection and that of those who represent you.

This Affidavit stands as notice of Pending Litigation and as such will be forwarded to the Office of the Attorney General to provide such notice of intent. This Affidavit and your response or lack thereof will accompany the Federal complaint which will be filed 15-Days from today

Affiant further sayeth naught

All Rights Reserved,

1-3-2021

**Matthew Oliver Reardon**, Affiant/Declarant

Date

---

## NOTARY STATEMENT

In the State of Mississippi,

County of Lafayette

I swear that on this 3rd day of <u>January</u>, 2022 the above-named Affiant/Declarant, **Matthew Oliver Reardon**, personally appeared before me, and of his own free will, signed and executed this Affidavit/Declaration of Truth.

1/3/2022

Notary Public

My Commission Expires:

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 229349
TINA JOHNSON
Commission Expires
Aug. 2, 2024
LAFAYETTE COUNTY

Seal:

**PROOF OF SERVICE**

| Case:<br>L21-494 | Court:<br>LAFAYETTE COUNTY CIRCUIT COURT | County:<br>LAFAYETTE | |
|---|---|---|---|
| Plaintiff / Petitioner: MATTHEW REARDON | | Defendant / Respondent:<br>STATE OF MISSISSIPPI | |
| Received by: LAFAYETTE COUNTY BOARD ATTORNEY<br>DAVID O'DONNELL | | For:<br>AFFIDAVIT OF TRUTH FOR IMMEDIATE SERVICE TO SHERIFF EAST | |
| To be served upon:<br>SHERIFF JOEY EAST | | | |

LAFAYETTE COUNTY BOARD OF SUPERVISORS

I, Matthew Reardon, served the AFFIDAVIT OF TRUTH FOR IMMEDIATE SERVICE TO SHERIFF EAST upon the person named above in the manner set forth below:

PERSONAL SERVICE. I personally delivered copies to Lafayette County Board Attorney David O'Donnell on January 4, 2022 in person and confirmed via electronic communication filed with this proof of service, where I found said authorized individual in Lafayette County,MS

Address where served: 300 North Lamar, Oxford, MS 38655

Personally appeared before me the undersigned authority in and for the state of County aforesaid, the within named Matthew Reardon who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service" are true and correct as therein stated.

Adopted effective March 1, 1985; amended effective May 2, 1985, amended March 17th 1995.

_____  4/1/22
                          Date

Matt Reardon

State of _Mississippi_
County of _Lafayette_
Subscribed and sworn to before me, a notary public

_____
Notary Public

My Commission Expires Jan. 2, 2024
Commission Expires

**LAFAYETTE COUNTY**
**FILED**

APR 0 1 2022

JEFF BUSBY
CIRCUIT CLERK
BY: _____ D.C.

**Service of Affidavit/Declaration to East**

 **Matt Reardon <matt@mattreardon.com>**
     Tue, 04 Jan 2022 3:14:43 PM -0600

  To   "Dodonnell" <dodonnell@claytonodonnell.com>

  Cc   "Jeast" <jeast@lafayettecoms.com>

Tags ⟋

**1 Attachment**

Affidavit-Declaration-of-Truth-Reardon-to-East-filed-copy.pdf

Mr O'Donnell,

Would you kindly accept formal service of this affidavit which I gave you a copy of last night, and tender it over to Sheriff?

If Sheriff East is willing to take direct receipt of it electronically through acknowledgement, that will also work.

I don't believe that I should have to incur any additional burdens and costs simply in making sure that the Sheriff, an elected Government Official, is properly provided this document which is time sensitive in order for him to provide any response he wishes

*All My Best,*

**Matt Reardon**
***Founder of Outlawed Productions***
**Producer & Creator of** *Riding With The Outlaw*
**662-550-9752**

***A MUST READ!! READ MY STORY HERE >*** *https://ridingwiththeoutlaw.com/my-story/*

**See the latest court filings, articles, evidence and video releases at** RIDINGWITHTHEOUTLAW.COM
***"When Freedom is Outlawed, Only The Outlaws Will Be Free"***

## RE: Service of Affidavit/Declaration to East

 **Matt Reardon** <matt@mattreardon.com>
Tue, 04 Jan 2022 3:29:04 PM -0600

To  "David O'Donnell" <dodonnell@claytonodonnell.com>

Tags ⟳

Thank you sir.

Please let me know if you and/or the County Board of Supervisors wishes to discuss, address, and potentially resolve any of the claims that are made over the following 2-weeks time, virtual or in person, prior to me proceeding forward on the alleged complaints.

## *All My Best,*

**Matt Reardon**
*Founder of Outlawed Productions*
**Producer & Creator of** *Riding With The Outlaw*
**662-550-9752**

*A MUST READ!! READ MY STORY HERE > https://ridingwiththeoutlaw.com/my-story/*

**See the latest court filings, articles, evidence and video releases at** RIDINGWITHTHEOUTLAW.COM
*"When Freedom is Outlawed, Only The Outlaws Will Be Free"*

---- On Tue, 04 Jan 2022 15:19:55 -0600 **David O'Donnell** <dodonnell@claytonodonnell.com> wrote -----

Matt:

I acknowledge my receipt of the affidavit immediately following yesterday afternoon's Board of Supervisor's meeting. I will provide a copy to Sheriff East.

David D. O'Donnell
Clayton O'Donnell PLLC
1403 Van Buren Avenue
Suite 103
Oxford, Ms. 38655
dodonnell@claytonodonnell.com
1(662) 234-0900

**No Response**

 Matt Reardon <matt@mattreardon.com>
Wed, 19 Jan 2022 10:32:41 AM -0600

To "Dodonnell" <dodonnell@claytonodonnell.com>

Tags ⬭

David,

Would I be correct in my assumption that the Sheriff chose not to rebut or give any response to the Affidavit filed on 1/3/22?

I would like to direct your attention to a particular Supreme Court case which I believe is going to be a highly relied upon case regarding everything that transpired in December and Lafayette County's continued well documented deprivation of significant procedural and substantive due process rights which when combined with all other Civil/Constitutional rights violations that have occurred create one of the darkest of clouds which currently hangs over Lafayette County.

The case in particular was a landmark decision of the US Supreme Court in mental health law ruling that a state cannot constitutionally confine a non-dangerous individual who is capable of surviving safely in freedom by themselves or with the help of willing and responsible family members or friends.

O'Connor v. Donaldson, 422 US 563

As I'm sure you are aware of, it was lies and obstruction tactics tendered to an employee of Communicare by the Sheriff in response to my finding the assigned Judge mysteriously changed on my current case which appeals the rulings in Justice Court. I am also sure you are aware of the interest Sheriff East has in this case being that he and his deputies gave sworn testimony in open court which turned out to be perjured and to also include defamatory statements made by the Sheriff himself. In light of the county being in receipt of press credentials I maintain on multiple occassions now, this move adds a quite interesting and unique twist to everything in that it wasn't only a private citizen whom had his rights viciously attacked by a county government, but a member of the press in order to prevent the discovery and reporting of pertinent information regarding my own filed legal matter. **I AM CONFIDENT THAT THESE MAJOR INTENTIONALLY ACTED UPON OCCURRENCES REMOVE ANY CLAIMS OF IMMUNITY ON THE CLAIMS ASSOCIATED**

Also, given the events that have transpired and continue on to this day along with the rights that have been affected, no state court could possibly provide proper relief needed. Not to mention there is substantial legislation overhaul badly needed in Mississippi, in particular it's mental health laws and the completely immoral exploitation of them by officials and employees of the local Governments within. This is something in particular I take a key interest in and if need be will take all the way to the Supreme Court although I feel like there is enough supportive case law supporting it which which makes it not necessary.

*the error from which these petitioners suffered was a denial of rights guaranteed against invasion by the Fifth and Fourteenth Amendments, rights rooted in the Bill of Rights, offered and championed in the*

*Congress by James Madison, who told the Congress that the "independent" federal courts would be the "guardians of those rights."*
Chapman v. California, 386 U.S. 18, 21

PLEASE TAKE NOTICE:
IF THE COUNTY WISHES TO DISCUSS POSSIBLE SETTLEMENT ON THESE MAJOR ISSUES AT HAND, RIGHT NOW IS THE TIME FOR THOSE DISCUSSIONS TO TAKE PLACE. ONCE LITIGATION ON THESE ISSUES COMMENCES, FULL DISCLOSURE ON ALL PERTAINING ISSUES WILL OCCUR AND I WILL BE SEEKING PRESENTATION OF ALL FACTS AND INFORMATION TO A JURY PANEL IN SEEKING AN AWARD IN DAMAGES BOTH COMPENSATORY AND PUNITIVE

*All My Best,*

**Matt Reardon**
*Founder of Outlawed Productions*
**Producer & Creator of** *Riding With The Outlaw*
**662-550-9752**

*A MUST READ!! READ MY STORY HERE >* *https://ridingwiththeoutlaw.com/my-story/*

See the latest court filings, articles, evidence and video releases
at RIDINGWITHTHEOUTLAW.COM
*"When Freedom is Outlawed, Only The Outlaws Will Be Free"*

## Read: No Response

DO     **dodonnell@claytonodonnell.com**
      Wed, 19 Jan 2022 10:55:31 AM -0600

    To    "Matt Reardon" <matt@mattreardon.com>

   Tags   ⊘
Security   ⊘ TLS   Learn more

Your message

   To: David O'Donnell
   Subject: No Response
   Sent: Wednesday, January 19, 2022 10:32:40 AM (UTC-06:00) Central Time (US & Canada)

 was read on Wednesday, January 19, 2022 10:55:25 AM (UTC-06:00) Central Time (US & Canada).
Final-recipient: RFC822; dodonnell@claytonodonnell.com
Disposition: automatic-action/MDN-sent-automatically; displayed
X-MSExch-Correlation-Key: zlAWsDiy1UOcoLGoTeDqJw==
Original-Message-ID:
   <17e732ee62e.e8882651565365.6540107081093076981@mattreardon.com>
X-Display-Name: David O'Donnell



*2021-691*

February 7th, 2022

<u>Via Email Only</u>

Dr Sandy Rogers
Executive Director of
Communicare 152 MS-7
Oxford, MS 38655

CC: Chancellor Lawrence Little
Presiding Judge over Involuntary Commitment
Lafayette County Chancery Court

**RE: Fraudulent Involuntary Judicial Commitment Stemming from False Information**

<u>**URGENT NOTICE PROVIDED. PLEASE TAKE APPROPRIATE ACTION**</u>

**Dear Dr Rogers,**

Between the date of December 6, 2021 and December 7, 2021 an employee of Communicare by the name of Rachel Alcorn came in receipt of inaccurate, untrue, and defamatory information given to her by Lafayette County Sheriff's Department which she acknowledged had been sourced by the Lafayette County Sheriff, Joey East himself. This in turn set off a series of events to follow, which in turn brought about irreparable injury while hindering the due course of justice and as a result broadened the scope of all which currently transpires. In the interest of transparency into all of this, I'd like to make it known that this entire fiasco was created based upon the fact that for the second time in approximately one year's time, I had discovered an important record that was fraudulently altered in Lafayette County Circuit Court. Finding out how this record could have changed and who could be responsible for changing it was and still is two very important questions to me as the same thing has happened now on both currently open filed matters of mine in Lafayette County Circuit Court. To make matters even worse, I have identified numerous pieces of inaccurate information reported by another employee of Communicare by the name of Stacey Waites whom conducted the intake at the Lafayette County Detention Center on December 8th, 2021. Then there is the absolutely bizarre notation and reasoning by the Doctor and Nurse Practitioner via remote video conference which when combined with the facts and all other erroneous and obnoxious matters at hand lead me to believing that everything that transpired was the result of heavily politicized persecution for me having the drive and focus that I have on all current ongoing legal matters I am involved in. Particularly when this Doctor notated on his report that I was "very preoccupied with ongoing legal cases" and described my condition as



Bipolar with "delusions" in his report recommending in-patient commitment. To fault me for being pre-occupied with ongoing legal cases is absolutely ludicrous when factoring in that I am having to perform the work of an attorney due to not being able to afford the monumental costs an attorney would charge to represent me in two supreme court appeals, two circuit court matters, a chancery court matter, a recently wrapped up Justice Court matter, and at a bare minimum now one pending District Court Matter. Being "pre-occupied with ongoing legal cases" should be fully expected of anyone currently engaged in multiple legal battles in multiple venues such as I am, particularly when that individual happens to be representing himself in seeking full vindication from a complete miscarriage of justice that transpired in 2017 which continues to be exacerbated through continued lies tendered by Lafayette County Officials and in particular Sheriff East whom in fact played a hand in all that has occurred dating back to May of 2017. Contrary to the opinion of this Doctor and your staff whom never fact checked anything, the claims I have made and produced a plethora of evidence supporting are not "Conspiracy Theories" or "Delusions", nor have I ever "Provoked anyone with my minor child" as the affidavit and reports following attested to. These are insinuations and character assassinations that Lafayette County and in particular its sheriff wanted to have conveyed which at least temporarily it was successful in doing through full exploitation of the State of Mississippi's mental health laws and through the assistance of your employees and contractors working on behalf of your organization at the expense of my rights and liberties. The negligent acts of your employees have sought to demonize lawful, authorized, and constitutionally protected activity through the pushing of a narrative that was distasteful and untrue.

I am an independent credentialed member of the press whom has taken on a role of investigating and reporting the corrupt acts demonstrated by this county while fully documenting my journey in seeking full vindication and my credentials have been on file with the County and Sheriffs Department, so this was no new occurrence or surprise. For your convenience I am attaching a copy to this letter so that they again are on file in one more place in this county. The most unfortunate consequence, however, is that employees of Communicare through not properly following policy and procedure as it relates to state and federal law have now directly aided and provided assistance to certain Lafayette County Officials and in particular Sheriff East in their attempt to "cover up" and abscond from their wrongful deeds. As a result of such I have lost all trust in your organization and its staff, and honestly who could blame me?

The State of Mississippi's Mental Health laws are outdated and I firmly believe that what has transpired here demonstrates the level of ease for the State and County Governments to exploit their own system, and through doing so have done a pristine job of exposing its major flaws. The process

for initiating Civil Commitment proceedings is detailed out in MS Code 41-21-65. In that it states:

> If any person is alleged to be in need of treatment, any relative of the person, or any interested person, may make affidavit of that fact and shall file the Uniform Civil Commitment Affidavit with the clerk of the chancery court of the county in which the person alleged to be in need of treatment resides, but the chancellor or duly appointed special master may, in his or her discretion, hear the matter in the county in which the person may be found. The affidavit shall set forth the name and address of the proposed patient's nearest relatives and whether the proposed patient resides or has visitation rights with any minor children, if known, and the reasons for the affidavit. The affidavit must contain factual descriptions of the proposed patient's recent behavior, including a description of the behavior, where it occurred, and over what period of time it occurred, if known. Each factual allegation may be supported by observations of witnesses named in the affidavit.

The requirements in this simply were not met, nor were they ever justified. Not only was the Affidavit not supported by any named witnesses, but the entire procedure was botched by the affiant attesting under sworn affidavit to non-factual claims along with claims that were in fact constitutionally protected and ordained particularly for an independent credentialed member of the press in the performance of his duties, which the Lafayette County through its officials nor employees of Communicare had any such right to interfere with and hinder. Further, the affidavit and reports to follow were comprised of judgmental and conclusory statements that were untrue in nature and relied primarily upon information stemming from an outside party whom was never named as required under the above statute. Fortunately, in one measure of good faith, there is a listed imposition of penalties against false affidavits being filed in bad faith for a malicious purpose in that:

> The prohibition against charging the affiant other fees, expenses, or costs shall not preclude the imposition of monetary criminal penalties under Section 41-21-107 or any other criminal statute, or the imposition by the chancellor of monetary penalties for contempt if the affiant is found to have filed an intentionally false affidavit or filed the affidavit in bad faith for a malicious purpose.

A State Law cannot be held constitutional if it directly infringes on established law on a Federal Level to include if that particular law/legislation deprives a citizen of any constitutional right or any guaranteed Due Process Right – to include Substantive in that a citizen is subjected to the undue deprivation of life, liberty, or property. A finding of "mental illness" alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement.

Assuming that that term can be given a reasonably precise content and that the "mentally ill" can be identified with reasonable accuracy, there is still no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom. The matter at hand was decided upon in Davidson vs O'Connor, a Landmark US Supreme Court case, which Stated in short, a State cannot constitutionally confine without more a non-dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends. The question was then posed, may the State fence in the harmless mentally ill solely to save its citizens from exposure to those whose ways are different? One might as well ask if the State, to avoid public unease, could incarcerate all who are physically unattractive or socially eccentric. Mere public intolerance or animosity cannot constitutionally justify the deprivation of a person's physical liberty. See, e. g., Cohen v. California, 403 U.S. 15, 24 -26; Coates v. City of [422 U.S. 563, 576] Cincinnati, 402 U.S. 611, 615; Street v. New York, 394 U.S. 576, 592; cf. U.S. Dept. of Agriculture v. Moreno, 413 U.S. 528, 534.

In conclusion, the flaws which occurred in this matter have not only violated the mental health laws established by the state of Mississippi, but have created a material breach of substantive due process rights guaranteed to all citizens and protected under federal law. As such, you are hereby requested to review and revise your current policies within the following 7 days in order to bring them into compliance with not only state law but federal law as well in order to circumvent a similar matter from occurring in the future and to provide in writing any offered changes to such policies. In addition, as stated above, please take appropriate action to produce and preserve any and all information associated with the incident below to include any information describing the incident below that is maintained by Communicare and/or any of its employees to include any individual subcontracted out. This preservation should include all audio recordings taken during intake. any documentation/notes taken, and any communication regarding the matter sent and/or received leading up to and including the final determination being made to involuntarily commit Matthew Reardon to a state hospital facility on December 9, 2021.

My Best Regards,

Matthew Reardon

mail@mattreardon.com

662-550-9752

**Video Documenting all that occurred on December 6, 2021 along with supporting evidence may be viewed online at:**

RIDINGWITHTHEOUTLAW.COM/A-FRAUDULENT-COMMITMENT

# PRESS ID

*Carte de Presse / Pase de Prensa / Presseausweis*

## Credentialed Reporter / Photographer

Matthew Reardon

**Is a Reporter / Photographer and a member in good standing with the Constitution First Amendment Press Association (CFAPA.org)**



### Issue Date:

July 01, 2021

Do not hinder, exclude, or block the view of this journalist in the exercise of the long-established and court-recognized 1st Amendment right to be present at and to photograph or film any event in any public place. See: Perry Education Association v. Perry Local Educators' Association. (1983)

1st Amendment: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (Enacted by Congress on December 15, 1791.)

Any officer or public official who deprives another of their 1st Amendment rights is personally and departmentally subject to suit for civil damages for deprivation of rights. Per 42 U.S.C. § 1983, "every person" who under color of law deprives another person of his civil rights is liable for civil damages.) See: Pierson v. Ray, 386 U.S. 547 (1967) – a U.S. Supreme Court case. Also see: Monell v. Department of Social Services, wherein the U.S. Supreme Court held that municipalities and local governments can be sued if the action was attributable to an official policy.

Law enforcement officers, public officials, and public employees do not enjoy absolute immunity.

**Copyright 2014, Constitution First Amendment Press Association. (CFAPA.org) - All Rights Reserved. CFAPA is not liable or responsible for the actions of its independent members.**

IN THE CHANCERY COURT OF **Lafayette** COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI
LAFAYETTE JUDICIAL DISTRICT
18th

IN RE: **Matthew Reardon** CAUSE NO. **2021-691 (L)**

2021 DEC -7 P 9:10

CHANCERY CLERK

### UNIFORM COMMITMENT AFFIDAVIT UNDER MCA SECTION 41-21-65

COMES NOW **Rachel Alcorn**, relative and/or interested person, residing at **Communicare** BY DC telephone number **(662-234-7521**, duly sworn and deposed, says the following to be true and correct to the best of my knowledge and belief:

**Matthew Reardon** is a person I allege to be in need of treatment by outpatient or inpatient commitment. To my knowledge this person DOES / DOES NOT (circle one) reside or have visitation rights with a minor child or children. Their nearest relative, if known, is _____ who resides at _____ telephone number _____. I allege the person to be in need of treatment because the person is mentally ill under law and poses a likelihood of physical harm to themselves or others as demonstrated by (mark as many as may apply) ✓ a recent attempt or threat to physically harm themselves or others and/or ✓ a failure and inability to provide necessary food, clothing, shelter, safety, or medical care to themselves as a result of the impairment and/or ____ based on treatment history or other relevant evidence, this person is in need of treatment to prevent further disability or deterioration which will predictably result in dangerousness to themselves or others when their current mental illness limits or negates their ability to make an informed decision to seek or comply with recommended treatment. To my knowledge the recent behavior described herein is not caused by any of the following: epilepsy; intellectual disability; brief periods of intoxication, dependence upon or addiction to alcohol or drugs; or senile dementia.

Factual descriptions of recent behavior, witnesses, and where and when it occurred, if known: **Go into public places recording people, parinoid and dellusional propositioning people with his minor child, not taking meds and not getting medical help** (attach additional pages if needed)

I HAVE / HAVE NOT (circle one) consulted with a Community Mental Health Center or a physician to determine whether the alleged acts by the proposed respondent warrant civil commitment in lieu of other less-restrictive treatment options.

SWORN TO AND SIGNED BY MY HAND this the 7th day of **December 2021** A.D.

**Rachel Alcorn**
AFFIANT (relative and/or interested person)

SWORN TO AND SUBSCRIBED BEFORE ME this the 7th day of **December 2021** A.D.

**Nina Johnson**
NOTARY PUBLIC

CV2021-691(4)

FILED **CERTIFICATE OF EXAMNING PHYSICIAN/PSYCHOLOGIST**

STATE OF MISS.

We, Dr. Milton Hobbs and Sharon Lipton, ACNP do hereby certify that on the 3 18 day of December, 2021, we conducted a thorough mental and physical examination of Matthew Reardon of Lafayette County, Mississippi, and that it is our opinion that said person (is) (is not) suffering from mental illness, more particularly described as Bipolar & delusional

manifested by:

X grossly disturbed behavior/faulty perceptions, and poses a substantial likelihood of physical harm:

   X by recent threats or attempts to harm self or others.

   X by failure to provide necessary care for self.

- and -

X requires treatment to prevent further disability or deterioration.

Said person (is) (is not) in need of observation, diagnosis, and treatment through:

X Inpatient Treatment/Hospitalization   ☐ Court Ordered Outpatient Services at Communicare

Facts supporting these findings include: Mr. Matthew Reardon is a 34 year old male with a history of mental illness requiring inpatient treatment. He was at the North MS State Hospital 7/2021 + he quit taking his psychiatric medications at the time of discharge. He repeats himself frequently. He is very preoccupied with ongoing legal cases. Inpatient treatment is recommended at this time.

So certified this 8 of December, 2021.

_M Hobbs, MD_
**Physician/Psychologist Signature**

_Sharon Lipton, ACNP_
**Physician/Psychologist Signature**