IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MATTHEW OLIVER REARDON

V.  CAUSE NO. 3:22-CV-50-SA-JMV

STATE OF MISSISSIPPI, et al.

ORDER AND MEMORANDUM OPINION

On April 6, 2022, Matthew Oliver Reardon initiated this civil action by filing his *pro se* Complaint [1]. On July 19, 2022, Reardon filed his First Amended Complaint [30], wherein he named the following Defendants: the State of Mississippi; Lafayette County, Mississippi; Lafayette County Chancery Court; Communicare; Mississippi Department of Mental Health; Lafayette County Sheriff's Department; Joseph B. East; Dr. Sandy Rogers; Rachel Alcorn; Susan Beard; Sherry Wall; Jeff Busby; and David O'Donnell. The State of Mississippi and the Mississippi Department of Mental Health have each filed Motions to Dismiss [38, 43]. Reardon has not responded to the Motions [38, 43], but his deadline to do so has long passed. The Court is prepared to rule.

*Relevant Background*

Including the attachments, Reardon's *pro se* Complaint [30] is 74 pages in length. It includes various allegations against the Defendants and, at times, is difficult to follow. Nevertheless, with that caveat, the Court will provide a brief background.

According to his Amended Complaint [30], Reardon was prosecuted in state court for disorderly conduct and resisting arrest in November 2021. The charges arose from an incident between Reardon and his ex-wife, Phyllis Liz Crowder. The case proceeded to trial, and Reardon was convicted. Although the theory is not completely clear, Reardon seemingly believes that the

charges were the result of a conspiracy against him. He then apparently began appearing at the Lafayette County Clerk's Office on multiple occasions, seeking documents and becoming agitated with Clerk's Office employees. This allegedly occurred on multiple occasions—so much so that the Lafayette County Board Attorney, David O'Donnell, emailed Reardon regarding the issue. O'Donnell's email, dated December 3, 2021, provided in pertinent part:

> Finally, the clerks report that you have been verbally abusive toward them and that the behavior seems to be increasing in frequency and intensity. There is no need for behavior that disrupts court business and decorum and, if it continues, the judges of the court may pursue their options to address the behavior.

[30] at p. 21.

Reardon's confrontation with the Clerk's Office staff apparently reached a tipping point on December 6, 2021. Reardon alleges that, on that date, he "discovered a 'mysterious' altering of court records regarding assignment of judge in both of his filed and active matters in Lafayette County Circuit Court." *Id*. Reardon's allegations continue:

> 75. Plaintiff proceeded to the Lafayette County Circuit Court Circuit Clerk's Office and began asking questions in to how this could have happened and who would have been able to change it, normal questions that should be expected of any concerned citizen. Plaintiffs feels he exhibited a calm, non-confrontational approach to the questions he was asking, fully documenting his interaction.
>
> 76. Circuit Court Clerk, Jeff Busby, got highly defensive when plaintiff began asking questions and advised the other clerks to not answer any of plaintiff's questions.
>
> 77. After admitting he had never seen or heard of the such happening, Busby gets on his cellphone and presumably calls the Lafayette County Sheriff, Joey East, to report Plaintiffs' presence at Lafayette County Circuit Court.
>
> 78. At that point Plaintiff leaves the Circuit Clerks Office and continues outside toward[] his vehicle. Around the same time that Plaintiff got situated in his vehicle, Defendant East

> pulls up initially blocking Plaintiff from reversing. Then East parks next to plaintiff, and their conversation ensues[.]
>
> 79. Defendant East orders Plaintiff not to go back into Circuit Court unless he has something to file because he was "Disrupting their business".

*Id*. at 22.

The following day, a Uniform Commitment Affidavit was filed against Reardon in the Chancery Court of Lafayette County. The affidavit was completed by Rachel Alcorn, a "relative and/or interested person, residing at Communicare." *Id*. at 73. The affidavit marked the following options as applicable to Reardon: "a recent attempt or threat to physically harm themselves or others;" and "a failure and inability to provide necessary medical care to themselves as a result of the impairment." *Id*. Alcorn provided the following factual description regarding Reardon:

> Go into public places recording people, parinoid [sic] and dellusional [sic] provoking people with his minor child, not taking meds and not getting medical help.

*Id*.

According to Reardon, after the affidavit was filed, "a writ to take plaintiff into custody was immediately signed off on by Chancellor Lawrence Little." *Id*. at p. 28. Reardon was in fact taken into custody and contends that he was "sent to the Tupelo Crisis Center just up the hill from the North Mississippi State Hospital where he sat deprived of his liberty from December 9, 2021 until December 23, 2021." *Id*. at p. 23. He contends that the civil commitment proceedings against him were unlawful. Reardon then began appearing at the Lafayette County Circuit Court and making calls to the Lafayette County Sheriff's Department.

Next, Reardon explains that an additional affidavit was filed against him on February 9, 2022, by Susan Beard, another Communicare employee. According to Reardon, that affidavit falsely claimed that he had "refused to attend a scheduled appointment." *Id*. at p. 30. He was

3

apparently involuntarily committed to a mental institution for a period of 30 days.

Reardon contends that "[t]he fact that listed Defendants utilized involuntary commitment TWICE over a span of approximately two months' time when he never posed as a danger or threat to himself of others further demonstrates an intentional, deliberate indifference show to Plaintiff's Constitutional Rights far above and beyond that of plain negligence." *Id*. at p. 35. He then asserts a total of 17 different claims—some based on federal law and some based on state law—against the multiple above-listed Defendants. The claims span from allegations of false arrest, unlawful detention, violation of the right to free speech to tortious interference with business and wrongful interference with familial relationships.

As noted above, the present Motions [38, 43] have been filed by the State of Mississippi and the Mississippi Department of Mental Health. The State and the Department are represented by the same counsel, and the Motions [38, 43] are based upon the same theory—that Reardon's claims against them run afoul of the Eleventh Amendment. The State's Motion [38] was filed on August 8, 2022, and the Department's Motion [43] was filed on October 20, 2022. But Reardon has not responded to the filings.

For the sake of clarity, the Court notes that Reardon previously, on July 14, 2022, filed a Motion to Stay Proceedings [33], requesting that the Court stay all proceedings "due to Plaintiff currently being incarcerated at the Lafayette County Detention Center in Oxford, MS." [33] at p. 1. On August 16, 2022, the Court entered an Order [40] which, among other things, denied Reardon's request to stay proceedings. However, the Court did extend his deadlines to make certain filings. The Court also directed the Clerk of Court to mail a copy of its Order [40] to the Lafayette County Detention Center, as well as Reardon's address listed on the docket, which he provided when he initiated this lawsuit.

4

Reardon has been provided ample opportunity to respond to the present Motion [38, 43], and, despite his failure to do so, the Court will no longer delay.

*Analysis and Discussion*

Reardon's claims against the State and the Department arise under both federal law and state law. As noted above, the Defendants raise Eleventh Amendment immunity.

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Although the Eleventh Amendment's language does not address suits against a State by its own citizens, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

The Eleventh Amendment acts to bar an individual "from suing a state in federal court unless the state consents to suit or Congress has clearly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). The Eleventh Amendment bars both federal and state law claims against a state in federal court. *Yul Chu v. Miss. State Univ.*, 901 F. Supp. 2d 761, 771 (N.D. Miss. 2012) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-21, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)); *Kirk v. Miss. Dep't of Pub. Safety*, 2016 WL 10293382, at *4 (S.D. Miss. May 26, 2016) ("[T]he immunity provided by the Eleventh Amendment applies to both federal and state law claims.").

Importantly, the immunity "protects not only states from suit in federal court, but also 'arms of the state.'" *U.S. Oil Recovery Site Potential Responsible Parties Grp. v. R.R. Comm'n of*

5

*Tex.*, 898 F.3d 497, 501 (5th Cir. 2018) (quoting *Richards v. S. Univ.*, 118 F.3d 450, 452-54 (5th Cir. 1997)). Thus, "[t]he state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez*, 307 F.3d at 326. Furthermore, the immunity "extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *Yul Chu*, 901. F. Supp. 2d at 771 (quoting *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143 (5th Cir. 2012)) (additional citations omitted).

This Court has relatively recently applied this standard and dismissed claims pursuant to Eleventh Amendment immunity. *See Towns v. Miss. Dep't of Corrections*, 2020 WL 1249904 (N.D. Miss. Mar. 16, 2020). In that case, the plaintiff, Jason Towns, filed suit against the Mississippi Department of Corrections ("MDOC"), along with other defendants, after he was assaulted while incarcerated at Parchman. *Id*. at *1. The Court ultimately recognized that MDOC was an arm of the state and therefore dismissed the claims against it based upon Eleventh Amendment immunity. *Id*. at *3-4.

The application of the standard in the case *sub judice* is straightforward. Reardon's claims against the State of Mississippi are clearly prohibited from proceeding in this forum. His claims against the Mississippi Department of Mental Health are likewise precluded so long as the Department is considered an "arm of the state." The District Court for the Southern District of Mississippi has previously concluded that it is—"as MDMH is an arm of the state, plaintiff's claims . . . are barred by the Eleventh Amendment." *Biggs v. Legrand*, 2016 WL 280288, at *2 (S.D. Miss. Jan. 21, 2016). The Court adopts here the same reasoning articulated by the District Court for the Southern District of Mississippi in that case.

Reardon's claims against these Defendants cannot proceed in federal court. The Court will

6

dismiss the claims but will do so *without prejudice* so that Reardon will have an opportunity to file the claims in the appropriate forum.[1]

*Conclusion*

For the reasons set forth above, the present Motions [38, 43] are GRANTED. Reardon's claims against the State of Mississippi and the Mississippi Department of Mental Health are hereby dismissed *without prejudice*. The Clerk of Court shall terminate the State of Mississippi and the Mississippi Department of Mental Health as Defendants on the docket. Consistent with the Amended Order Staying Case [49], this case shall remain stayed at this time.[2]

SO ORDERED, this the 17th day of January, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[1] The Court is cognizant that there are three exceptions to Eleventh Amendment immunity—waiver, the *Ex Parte Young* doctrine, and abrogation. *See, e.g., Towns*, 2020 WL 1249904 at *4-6 (explaining the exceptions). However, considering that Reardon has made no argument that these exceptions apply, the Court sees no need to address them in detail.

[2] At this time, the Court has not been made aware of whether Reardon remains in custody at the Lafayette County Detention Center. However, despite the fact that Reardon has registered to receive electronic notifications of filings in this case, the Court hereby, out of an abundance of caution, directs the Clerk of Court to mail a copy of this Order and an Acknowledgement of Receipt to Reardon's attention at the Lafayette County Detention Center and to Reardon's physical address listed on the docket.