IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MATTHEW OLIVER REARDON

V.                                                          CAUSE NO. 3:22-CV-50-SA-JMV

LAFAYETTE COUNTY, MISSISSIPPI, et al.

ORDER AND MEMORANDUM OPINION

On April 6, 2022, Matthew Oliver Reardon initiated this civil action by filing his *pro se* Complaint [1]. On July 19, 2022, Reardon filed his First Amended Complaint [30], wherein he named the following Defendants: the State of Mississippi; Lafayette County, Mississippi; Lafayette County Chancery Court; Communicare; Mississippi Department of Mental Health; Lafayette County Sheriff's Department; Joseph B. East; Dr. Sandy Rogers; Rachel Alcorn; Susan Beard; Sherry Wall; Jeff Busby; and David O'Donnell. Now before the Court are various Motions [46, 52, 84] that the Defendants have filed seeking dismissal of Reardon's claims. Reardon has also filed several Motions [60, 69, 71, 72, 81]. The Court is prepared to rule.

*Relevant Background*[1]

Including the attachments, Reardon's *pro se* Complaint [30] is 74 pages in length. It includes various allegations against the Defendants and, at times, is difficult to follow. With that caveat, the Court will provide a brief background.

According to his Amended Complaint [30], Reardon was prosecuted in state court for disorderly conduct and resisting arrest in November 2021. The charges arose from an incident between Reardon and his ex-wife, Phyllis Liz Crowder. The case proceeded to trial, and Reardon

---

[1] Much of the factual recitation set forth below is identical to the recitation set forth in the Court's previous Order and Memorandum Opinion [51].

was convicted. Although the theory is not completely clear, Reardon seemingly believes that the charges were the result of a conspiracy against him.

After his conviction, Reardon apparently began appearing at the Lafayette County Clerk's Office, seeking documents and becoming agitated with Clerk's Office employees. This seemingly became a distraction—so much so that the Lafayette County Board Attorney, David O'Donnell, emailed Reardon regarding the issue. O'Donnell's email, dated December 3, 2021, provided in pertinent part:

> Finally, the clerks report that you have been verbally abusive toward them and that the behavior seems to be increasing in frequency and intensity. There is no need for behavior that disrupts court business and decorum and, if it continues, the judges of the court may pursue their options to address the behavior.

[30] at p. 21.

Reardon's confrontation with the Clerk's Office staff apparently reached a tipping point on December 6, 2021. Reardon alleges that, on that date, he "discovered a 'mysterious' altering of court records regarding assignment of judge in both of his filed and active matters in Lafayette County Circuit Court." *Id*. Reardon's allegations continue:

> 75. Plaintiff proceeded to the Lafayette County Circuit Court Circuit Court Clerk's Office and began asking questions in to how this could have happened and who would have been able to change it, normal questions that should be expected of any concerned citizen. Plaintiff feels he exhibited a calm, non-confrontational approach to the questions he was asking, fully documenting his interaction.

> 76. Circuit Court Clerk, Jeff Busby, got highly defensive when plaintiff began asking questions and advised the other clerks to not answer any of plaintiff's questions.

> 77. After admitting he had never seen or heard of the such happening, Busby gets on his cellphone and presumably calls the Lafayette County Sheriff, Joey East, to report Plaintiffs' presence at Lafayette County Circuit Court.

78. At that point Plaintiff leaves the Circuit Clerks Office and continues outside toward[] his vehicle. Around the same time that Plaintiff got situated in his vehicle, Defendant East pulls up initially blocking Plaintiff from reversing. Then East parks next to plaintiff, and their conversation ensues[.]

79. Defendant East orders Plaintiff not to go back into Circuit Court unless he has something to file because he was "Disrupting their business".

*Id*. at p. 22.

The following day, a Uniform Commitment Affidavit was filed against Reardon in the Chancery Court of Lafayette County. The affidavit was completed by Rachel Alcorn, a "relative and/or interested person, residing at Communicare." *Id*. at 73. The affidavit marked the following options as applicable to Reardon: "a recent attempt or threat to physically harm themselves or others;" and "a failure and inability to provide necessary medical care to themselves as a result of the impairment." *Id*. Alcorn provided the following factual description regarding Reardon:

> Go into public places recording people, parinoid [sic] and dellusional [sic] provoking people with his minor child, not taking meds and not getting medical help.

*Id*.

According to Reardon, after the affidavit was filed, "a writ to take plaintiff into custody was immediately signed off on by Chancellor Lawrence Little." *Id*. at p. 28. Reardon was in fact taken into custody and contends that he was "sent to the Tupelo Crisis Center just up the hill from the North Mississippi State Hospital where he sat deprived of his liberty from December 9, 2021 until December 23, 2021." *Id*. at p. 23. He contends that the civil commitment proceedings against him were unlawful. After his release, Reardon began appearing at the Lafayette County Circuit Court and making calls to the Lafayette County Sheriff's Department.

Next, Reardon explains that an additional affidavit was filed against him on February 9,

3

2022, by Susan Beard, another Communicare employee. According to Reardon, that affidavit falsely claimed that he had "refused to attend a scheduled appointment." *Id*. at p. 30. He was apparently involuntarily committed to a mental institution for a period of 30 days as a result of the affidavit (and subsequent writ).

Reardon contends that "[t]he fact that listed Defendants utilized involuntary commitment TWICE over a span of approximately two months' time when he never posed as a danger or threat to himself of others further demonstrates an intentional, deliberate indifference shown to Plaintiff's Constitutional Rights far above and beyond that of plain negligence." *Id*. at p. 35. He then asserts a total of 17 different claims—some based on federal law and some based on state law—against the multiple above-listed Defendants. The claims span from allegations of false arrest, unlawful detention, violation of the right to free speech to tortious interference with business relations and wrongful interference with familial relationships.

In a previous Order and Memorandum Opinion [51], the Court dismissed *without prejudice* Reardon's claims against the State of Mississippi and the Mississippi Department of Health based upon Eleventh Amendment immunity.

On January 11, 2023, Lafayette County, the Lafayette County Sheriff's Department, and Lafayette County Sheriff Joseph B. East (collectively "the County Defendants") jointly filed a Motion for Judgment on the Pleadings [46], raising multiple bases for dismissal of Reardon's claims against them. Thereafter, on January 20, 2023, Communicare; Dr. Sandy Rogers; Rachel Alcorn; and Susan Beard (collectively "the Communicare Defendants") filed a joint Motion for Judgment on the Pleadings [52], requesting dismissal of all claims asserted against them. The remaining Defendants, Jeff Busby (Lafayette County Circuit Clerk); Sherry Wall (Lafayette County Chancery Clerk); and David O'Donnell (Lafayette County Board of Supervisors Attorney)

also seek dismissal of Reardon's claims against them via a Motion to Dismiss [84]. Reardon has also filed numerous Motions, some of which are not artfully titled: Sworn Declaration and Request for Emergency Injunctive Relief with Stipulated Order for Protection [60]; Motion for Sanctions [69]; Emergency Motion for Relief from Judgment or Order with Prayer for Injunction and Protection [71]; Motion to Dismiss Claims [72]; and Motion for Order to Show Cause [81].

*Standard*

The County Defendants and the Communicare Defendants filed Motions for Judgment on the Pleadings [46, 52], whereas the other Defendants seek dismissal via a Motion to Dismiss [84]. However, for purposes of the applicable standard, this is a distinction without a difference because courts evaluate Rule 12(c) motions for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. 1937.

Ultimately, the district court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). Therefore, the reviewing court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v.*

5

*U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009). Still, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678.

*Analysis and Discussion*

As indicated above, there are numerous pending Motions. The Court will first address the Defendants' three separate Motions [46, 52, 84] and then turn to Reardon's Motions [60, 69, 71, 72, 81].

I.    *Preliminary Issues*

Before addressing the pending Motions, the Court will address multiple preliminary matters.

First, the Court notes that, in addition to naming Lafayette County as a Defendant, Reardon has named the Lafayette County Sheriff's Department. *See* [30] at p. 10-11. The capacity of a Sheriff's Department to be sued is governed by state law. FED. R. CIV. P. 17(b)(3). Although the Mississippi Code authorizes suit against "[e]very municipality of this state[,]" it does not authorize suit against a municipality's police or sheriff's department. MISS. CODE ANN. § 21-17-1(1); *Jackson v. City of Gulfport*, 2017 WL 651956, *2 (S.D. Miss. Feb. 16, 2017). In other words, "a [sheriff's] department is not a separate legal entity that may be sued. Rather, it is an extension of the city." *Id.*; *see also Brown v. Thompson*, 927 So.2d 733, 737 (Miss. 2006) (holding that a sheriff's department does not enjoy a separate legal existence apart from the county in which it operates and is therefore not subject to suit); *Stovall v. City of Hattiesburg*, 2010 WL 1908313, at *1-2 (S.D. Miss. May 17, 2010) (dismissing the Hattiesburg Police Department as a defendant because the City of Hattiesburg was the appropriate defendant).

Consistent with this well-settled authority, the Court finds that the Lafayette County Sheriff's Department lacks the capacity to be sued and is therefore not a proper Defendant. All

claims asserted against the Lafayette County Sheriff's Department are hereby DISMISSED.

Next, the Court feels compelled to address an overarching issue with Reardon's Amended Complaint [30]. As indicated above, it spans a total of 74 pages in length (including attachments)—some of which is difficult to follow. It is also noteworthy that this Amended Complaint [30] was filed after the Court, acting *sua sponte*, entered an Order to Show Cause [7] wherein it noted several deficiencies associated with Reardon's original Complaint [1]. The Amended Complaint [30] is the product of that Order [7], but, as noted above, it is undeniably convoluted and difficult to follow.

Additionally concerning the Amended Complaint [30], it is worth noting that under each separately asserted claim, Reardon includes form language and fails to specifically connect the facts to the cause of action. For example, Count One of his Amended Complaint [30] states as follows:

### COUNT ONE – DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

*Violation of the Fourth and Fourteenth Amendments – FALSE ARREST – pursuant to 42 U.S.C. § 1983*
Against Defendants Lafayette County Sheriff's Department and East

127.    The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

128.    Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

129.    WHEREFORE, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

[30] at p. 36.

The substantive source of relief is different for each separate claim, but Reardon includes

the exact same three paragraphs, without any additional explanation, under each claim. By doing so, Reardon did not connect the preceding allegations in his Amended Complaint [30] (which span over 35 pages) to the causes of action. In other words, he wholly failed to explain how the facts support the individual claims. This fact makes analyzing his Amended Complaint [30] particularly difficult, especially considering the extensive number of pages and the various topics which it addresses.

Although noting these issues associated with the Amended Complaint [30], the Court reiterates that it has already provided Reardon an opportunity to amend. The Court is also cognizant that Reardon is proceeding *pro se* and therefore entitled to a liberal construction of his pleadings. *See Calhoun v. Hargrove*, 312 F.3d 730, 733-34 (5th Cir. 2002) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)) ("It is well-established that *pro se* complaints are held to less stringent standards than formal pleadings drafter by lawyers.") (quotation marks omitted). However, this Court has previously emphasized that "wholesale incorporation of prior counts, including the facts asserted in support of those counts, into subsequent counts, themselves premised on other facts offered in support thereof, is, at best, confusing and problematic." *Roberson v. McDonald Transit Assoc., Inc.*, 2016 WL 2991142, at *3 n. 4 (N.D. Miss. Apr. 20, 2016).

In an effort to balance these considerations, the Court will not dismiss Reardon's Amended Complaint [30] on a technical pleading ground but does note that Reardon's failure to comply with the applicable pleading requirements is, to use this Court's prior words, confusing and problematic.

## II.     The Defendants' Motions [46, 52, 84]

Having made that caveat, the Court will address each of Reardon's claims and the corresponding arguments for dismissal. As to the remaining Defendants, Reardon's Amended

Complaint [30] sets forth the following claims:

1. <u>Count One</u>: Violation of Fourth and Fourteenth Amendment right to be free from false arrest (pursuant to 42 U.S.C. § 1983);

2. <u>Counts Three and Four</u>: Violation of First and Fourteenth Amendment freedom of speech rights (pursuant to 42 U.S.C. § 1983);

3. <u>Count Five</u>: Violation of Fifth and Fourteenth Amendment due process rights (pursuant to 18 U.S.C. § 242);

4. <u>Count Six</u>: Conspiracy to violate Fourteenth Amendment rights (pursuant to 42 U.S.C. § 1985);

5. <u>Count Seven</u>: Violation of Fourteenth Amendment rights (pursuant to 42 U.S.C. § 1983);

6. <u>Count Eight</u>: Violation of False Claims Act;

7. <u>Count Nine</u>: Violation of Fourth and Fourteenth Amendment right to be free from false imprisonment (pursuant to 42 U.S.C. § 1983);

8. <u>Count Ten</u>: False Imprisonment (state law);

9. <u>Count Eleven</u>: Wrongful interference with familial relationships (state law);

10. <u>Count Twelve</u>: Tortious interference into business (state law);

11. <u>Counts Thirteen and Fourteen</u>: Defamation of character (state law);

12. <u>Count Fifteen</u>: Intentional infliction of emotional distress (state law);

13. <u>Count Sixteen</u>: Negligent infliction of emotional distress (state law); and

14. <u>Count Seventeen</u>: Neglect to Prevent (pursuant to 42 U.S.C. § 1986).

[30] at p. 36-44.[2]

   A.    *Section 1983 Claims*

Several of Reardon's claims are asserted pursuant to Section 1983. The Court is cognizant that some of these claims are asserted against municipalities and some are asserted against individuals.

Of course, different standards are applicable to a Section 1983 claim against a municipality and an individual capacity claim against a law enforcement officer. *See Weeks v. Thompson*, 2007 WL 316261, at *2 (N.D. Miss. Jan. 31, 2007) ("Municipal liability under section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom."); *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) (holding that law enforcement officers are entitled to qualified immunity "unless it is shown that, at the time of the incident, [the officer] violated a clearly established constitutional right."). Nevertheless, whether seeking to impose liability against a municipality or an individual officer, a Section 1983 plaintiff must first allege that she has been deprived of a right secured by the United States Constitution or federal law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (holding that in order to establish a Section 1983 claim, there must be "a deprivation of a right secured by federal law[.]"). If the plaintiff has not been deprived of a federal constitutional or statutory right, there can be no viable Section 1983 claim. *Id.*

Remaining cognizant of those different standards, the Court will separately address each of Reardon's Section 1983 claims.

   i.    *Count One*

In Count One, Reardon asserts a false arrest claim. The claim is asserted against East and

---

[2] Count Two was asserted only against the State of Mississippi and the Mississippi Department of Mental Health. Since both of those entities have been dismissed, the Court will not address that Count.

the Lafayette County Sheriff's Department. However, considering the Court's ruling above that the Sheriff's Department is not a proper Defendant, this claim is now only against East.

"[A] warrantless arrest without probable cause is unconstitutional." *Magee v. Pike Cnty.*, 2019 WL 7040627, at *6 (S.D. Miss. Dec. 20, 2019). "To prevail on a section 1983 false arrest claim, the plaintiff must show that [the arresting officer] did not have probable cause to arrest [him]." *Id*. (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id*. (quoting *Haggerty*, 391 F.3d at 655-56; *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)).

Reardon's claim is fundamentally flawed. Presumably, though it is not at all clear, Reardon's contention is that the false arrest occurred on December 7, 2021 when the Lafayette County Sheriff's Department took him into custody at the commencement of the involuntary commitment proceedings. Assuming without deciding that this constituted an arrest, the deputies were certainly authorized to take Reardon into custody. Reardon himself admits that the deputies were acting pursuant to a writ to take him into custody that had been signed by Chancellor Lawrence Little. Considering Reardon's concession on that point, the Court cannot find that the deputies lacked a legitimate basis to take him into custody.[3]

Ultimately, Reardon himself admits in his Amended Complaint [30] that he was taken into custody pursuant to a writ signed by a Chancellor. *See* [30] at p. 28 ("Nonetheless in the early afternoon on December 7, 2021 the affidavit is filed in Lafayette County Chancery Court and a

---

[3] Additionally, it is not at all clear that Reardon even contends that East was present at the time these events occurred, as his Amended Complaint simply refers to "Lafayette County Sheriff's Deputies" being present. [30] at p. 23.

writ to take plaintiff into custody was immediately signed off on by Chancellor Lawrence Little."). The Court simply cannot find that Reardon has stated a plausible false arrest claim under those circumstances. Count One of Reardon's Amended Complaint [30] is hereby DISMISSED.

    *ii.   Counts Three and Four*

Counts Three and Four of Reardon's Amended Complaint [30] both, pursuant to Section 1983, allege a "violation of the First and Fourteenth Amendments – FREEDOM OF SPEECH." *Id.* at p. 37. In Count Three, Reardon names East, Lafayette County, and the Lafayette County Chancery Court as Defendants. In Count Four, he names "all named parties." [30] at p. 37. However, as noted above, the individual claims provide no factual explanation; therefore, it is impossible to determine the difference between the two claims. The Court will analyze them together.

Although not at all clear, the Court *assumes* that Reardon's claims are based upon a First Amendment retaliation theory. Presumably, the claims are based upon the following allegations in the Amended Complaint [30]:

> 86.    The first stated reason for commitment on the Affidavit stated Plaintiff "Goes into public places recording people". This statement amounts to a blatant violation of Plaintiff's 1st Amendment Right which protects recording in public spaces. Plaintiff never went into public places to invade privacy of others or with the sole purpose of "recording people". As a credentialed member of the press being an independent investigative reporter/journalist, plaintiff would gather content for stories through accurately documenting his encounters through video or audio recording. More importantly, documenting interaction also doubled as a way for plaintiff to protect himself from the abominable lies, untrue insinuations, and complete character assassinations such as what transpired here. This statement alone amounts to a violation of Plaintiff's 1st Amendment Right[.]

[30] at p. 24.

Again, it is far from certain, but the Court presumes that Reardon's contention is that his exercise of his First Amendment rights served as the basis for the affidavit that was filed against him.

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). To prevail on a First Amendment retaliation claim, the plaintiff must show: "(1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct." *Id*.

Reardon has not alleged sufficient facts to support such a claim. Assuming that Reardon's allegation that his conduct of recording events as they transpired was a protected activity, he has not alleged any facts whatsoever to indicate that the Defendants' execution of the affidavit supporting his involuntary commitment were in any way motivated by his exercise of First Amendment rights. The Fifth Circuit has previously provided the following explanation regarding the causation prong: "In *Keenan*, we considered 'a situation in which law enforcement officers might have a motive to retaliate but there was also a ground to charge criminal conduct against the citizen they disliked,' and concluded that 'in that situation, the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Id*. (quoting *Keenan*, 290 F.3d at 261-62). Although the Court recognizes that causation is typically a question for the jury, Reardon has wholly failed to plead facts to connect his conduct to the commencement of involuntary commitment proceedings.

Counts Three and Four of the Amended Complaint [30] are hereby DISMISSED.

    *iii.    Count Seven*

Reardon asserts that all Defendants should be held liable for "deprivation of due process" in "[v]iolation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983." [30] at p. 39. Reardon's failure to provide additional information to support this claim is fatal. The Amended Complaint [30] provides no information as to whether the claim is based upon a deprivation of procedural due process or substantive due process. Similarly, it is completely unclear which factual allegations make up this claim.

While the Court has construed Reardon's claims quite liberally, it is simply unrealistic to analyze this claim at all. Count Seven is hereby DISMISSED.

    *iv.    Count Nine*

In Count Nine, Reardon alleges a Section 1983 claim based upon false imprisonment in violation of the Fourth and Fourteenth Amendments. Although this claim is styled as a separate claim from Reardon's false arrest claim, the same analytical framework applies. Recently, the Fifth Circuit analyzed an unlawful arrest claim and false imprisonment claim under the same standard. *See Johnson v. City of San Antonio*, 2023 WL 3019686, at *8 (5th Cir. Apr. 20, 2023) (citing *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)) ("To succeed on her unlawful arrest and false imprisonment claims, Roberts must show that there was not even arguably probable cause for her arrest.").

This Court has already determined that Reardon failed to state a claim for false arrest based upon the fact that it is unclear that he was ever arrested and, even assuming that he was, the deputies were acting pursuant to a writ signed by a Chancellor. Reardon's Section 1983 false imprisonment claim fails for the same reasons. That claim is DISMISSED.

*v.    Additional Considerations*

Having now determined that Reardon has failed to state plausible constitutional violations, the Court need not go any further in analyzing his Section 1983 claims. But the Court notes that, even if he had sufficiently alleged constitutional violations, his Amended Complaint [30] is still deficient.

As to the municipal liability claims, "[a] plausible basis of municipal liability under Section 1983 requires a showing of both a constitutional violation and a municipal policy or custom to which the constitutional violation is attributable." *Minor v. Miss. Dep't of Pub. Safety*, 2020 WL 1877798, at *2 (N.D. Miss. Apr. 15, 2020) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). "The three elements of Section 1983 municipal liability are: (1) an official policy (2) promulgated by the municipal policymaker (3) which was the moving force behind the violation of a constitutional right." *Id*. (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)). Importantly, "[m]unicipal liability does not attach solely because the municipality employed a tortfeasor." *Id*. (citations omitted).

Setting aside the lack of allegations of a constitutional violation, Reardon has not alleged the existence of any official policy. This would be fatal to his claims if they were not already deficient.

Similarly, the individual actors would be entitled to qualified immunity. "Qualified immunity protects government employees from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williamson v. Nettleton Sch. Dist.*, 2021 WL 3698395, at *2 (N.D. Miss. Aug. 19, 2021) (citations and quotation marks omitted). Once an individual raises qualified immunity in good faith, the burden shifts "to the plaintiff, who must rebut the defense by establishing that the

15

official's allegedly wrongful conduct violated clearly established law." *Wrecker Works, LLC v. City of Aberdeen, Miss.*, 2017 WL 5502945, at *8 (N.D. Miss. Nov. 14, 2017) (quoting *Wolfe v. Meziere*, 566 F. App'x 353, 354 (5th Cir. 2014)). A plaintiff can only overcome qualified immunity by showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016)). "The clearly established law must be particularized to the facts of the case." *Id.* (citations omitted).

Here, once the individual actors raised qualified immunity, the burden shifted to Reardon to point to clearly established law indicating that the individual actors' conduct was unlawful. Reardon has wholly failed to do so. Therefore, even if Reardon had alleged viable constitutional claims, dismissal would still be warranted under the qualified immunity doctrine.

### B.    *Other Federal Claims*

Having resolved Reardon's Section 1983 claims, the Court will move to his other theories of liability under federal law.

#### i.    *Counts Five and Eight*

In Count Five, Reardon alleges a "violation of the Fifth and Fourteenth Amendment pursuant to 18 U.S.C. § 242." [30] at p. 38. In Count Eight, he alleges a "violation of [the] False Claims Act." *Id.* at p. 39.

However, in a subsequent filing, Reardon "requests this Court to allow Plaintiff to withdraw all claims asserted under 18 U.S.C. 242 and the False Claims Act, 31 U.S.C. 3279 . . . as their application is improper." [72] at p. 1.

Recognizing Reardon's admission that these claims are improper, the Court hereby DISMISSES Counts Five and Eight.

*ii.* *Count Six*

In Count Six, Reardon alleges that East, Alcorn, Communicare, and the Lafayette County Chancery Court should be held liable for "conspiracy to deprive rights" in "[v]iolation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1985." [30] at p. 38.

"To establish a valid claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Mays v. TSI Staffing, Inc.*, 56 F. Supp. 2d 738, 739-40 (E.D. Tex. 1999) (citing *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)). Importantly, the plaintiff "must establish that the conspiracy was motivated by class-based animus." *Id*. at 740 (citing *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994)). "In this circuit, courts require an allegation of a race-based conspiracy to present a claim under § 1985(3)." *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 375 (M.D. La. 2022) (quoting *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001)).

Reardon's Amended Complaint [30] is completely devoid of alleged facts to support a Section 1985(3) conspiracy claim. As an initial matter, it is certainly not clear that Reardon has sufficiently alleged that the Defendants entered into any agreement to deprive him of any rights whatsoever. But there can be no serious dispute that he has failed to allege any class-based animus. Reardon's discontent is seemingly based solely upon the involuntary commitment process. That is insufficient as a matter of law for purposes of a Section 1985(3) claim. Count Six is hereby

DISMISSED.[4]

### iii.    Count Seventeen

Count Seventeen is asserted against O'Donnell, Wall, and Busby. The claim is styled as an "action for neglect to prevent" pursuant to 42 U.S.C. § 1986.

"To state a claim pursuant to 42 U.S.C. § 1986, 'which provides a cause of action against those who neglect or refuse to prevent wrongful acts permitted pursuant to a Section 1985 conspiracy,' [the plaintiff] must set forth a valid claim pursuant to 42 U.S.C. § 1985." *Goins v. City of Sansom Park*, 2015 WL 3953795, at *8 (N.D. Tex. May 29, 2015) (citing *Pardue v. Jackson Cray., Miss.,* 2015 WL 1867145, at *4 (S.D. Miss. Apr. 23, 2015). In other words, a valid Section 1986 claim presupposes Section 1985 conspiracy. *See id*. ("Because [the plaintiff] has failed to state a claim pursuant to 42 U.S.C. § 1985, he cannot have stated a valid claim pursuant to section 1986.").

The Court has previously dismissed Reardon's Section 1985 conspiracy claim for failure to state a claim. Consequently, his Section 1986 claim necessarily fails. Count Seventeen is hereby DISMISSED.

### C.    State Law Claims

Reardon also asserts various state law claims. The Defendants raise multiple bases for dismissal of each of them. Preliminary, they contend that Reardon failed to comply with the Mississippi Tort Claims Act's ("MTCA") pre-suit notice requirements. The Court will address that

---

[4] The Court briefly notes that Reardon did not specifically indicate that his Section 1985 conspiracy is based upon subsection 1985(3). However, the other two subsections clearly do not apply. "Section 1985(1) prohibits conspiracies to prevent, by force, intimidation, or threat a federal officer from discharging his duties or to injure him because of his lawful discharge of his duties. Section 1985(2) prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) (citations and quotation marks omitted). The Court sees no need to address those subsections any further.

contention prior to turning to the substantive arguments associated with the claims.

   *i.*   *MTCA's Pre-suit Notice Requirements*

  "[I]n Mississippi Code Section 11-46-5(1), the Legislature waived [] immunity of the state and its political subdivisions 'from claims for money damages arising out of the torts of such governmental entities and the torts of the employees while acting within the course and scope of their employment[.]" *Tallahatchie Gen. Hosp. v. Howe*, 49 So.3d 86, 91 (Miss. 2010) (quoting MISS. CODE ANN. § 11-46-5(1)). The Legislature also included within the MTCA multiple requirements, such as providing pre-suit notice, with which an individual must comply in order to bring a claim. *See id.* at 11-46-11(1). In pertinent part, Section 11-46-11(1) provides:

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.

*Id.*

  In addition, the MTCA provides specific requirements that must be satisfied for the pre-suit notice to be proper:

> Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the resident of the persons making the claim at the time of the injury and at the time of filing the notice.

*Id.* at § 11-46-11(2).

  Reardon attached to his Amended Complaint [30] a letter directed to Sandy Rogers, the

Executive Director of Communicare. *See* [30] at p. 67-70. It is far from clear that the letter was intended to constitute pre-suit notice under the MTCA, but if it was so intended, it is deficient. As an initial matter, the letter specifically indicates that it was delivered "via email only." *Id*. at p. 67. This runs afoul of Section 11-46-11(2)'s requirement that the notice be delivered in person or by registered or certified mail. Second, the letter fails to include an amount of money sought, and it additionally, from a more overarching perspective, does not possess qualities to indicate it is intended to be a pre-suit notice. Rather, it appears to be a letter of dissatisfaction with the State of Mississippi's mental health laws.[5]

To the extent Reardon's state law claims are subject to the MTCA, they must be DISMISSED for failure to comply with the statute's pre-suit notice requirement.[6]

    *ii.    Count Ten*

Count Ten is a state law false imprisonment claim against East, Communicare, and the Lafayette County Chancery Court.

"A plaintiff must prove two elements in order to succeed on a false-imprisonment claim: (1) the detention of the plaintiff; and (2) the unlawfulness of such detention." *Serv. Cos. v. Estate of Vaughn*, 169 So.3d 875, 879 (Miss. 2015). Assuming without deciding that Reardon was being

---

[5] In his Response [70], Reardon states that he delivered pre-suit notice to David O'Donnell in his capacity as Lafayette County Board Attorney. He references an "affidavit/declaration of truth" that he avers was delivered to O'Donnell. That document, which is essentially a twelve-page affidavit, expresses Reardon's dissatisfaction with the mental health laws but does not include an amount of money damages sought. Thus, it is likewise deficient, even if it was properly delivered.

[6] As indicated above, the MTCA only waives immunity for torts of governmental employees while acting within the course and scope of their employment. *See Tallahatchie Gen. Hosp.*, 49 So.3d at 91. "By definition, a government employee is not acting within the course and scope of his employment if his conduct constituted fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations." *Brown v. Wilkinson Cnty. Sheriff's Dept.*, 2017 WL 1479428, at *9 (S.D. Miss. Apr. 24, 2017) (internal citations and quotation marks omitted). Thus, certain torts by definition fall outside the purview of the MTCA, and Reardon's failure to comply with the pre-suit notice requirement is therefore not dispositive as to those particular claims. The Court will address the merits of each of the state law claims out of an abundance of caution.

taken into custody pursuant to the involuntary commitment process, he has not alleged any plausible facts that would establish that the detention was unlawful. In fact, based upon a review of the record as a whole, it appears that Reardon was properly taken into custody in accordance with the applicable mental health laws. Count Ten of the Amended Complaint [30] must be DISMISSED.

### iii. Count Eleven

In Count Eleven, Reardon asserts against all Defendants a state law claim for "wrongful interference with familial relationships." [30] at p. 41.

In their Memorandum [47], the County Defendants assert that they are "unaware of any recognized cause of action in Mississippi for 'wrongful interference with familial relations' or any other cause of action of similar import." [47] at p. 21. Despite filing a Response [70], Reardon did not address that contention in his filing. The failure to do so constitutes an abandonment of that claim. *See Scott v. Spencer Gifts, LLC*, 2015 WL 4205242, at *1 (N.D. Miss. July 10, 2015) ("In their response, Plaintiffs have made no argument and offered no proof in support of their claims of intentional infliction of emotional distress and failure to train or supervise, and thus the Court finds these theories to be abandoned.").

In addition to Reardon's abandonment of the claim, the Court, like the County Defendants, is unaware of such a cause of action under Mississippi law.

For these reasons, Count Eleven of Reardon's Amended Complaint [30] fails on the merits and must be DISMISSED.

### iv. Count Twelve

In Count Twelve, Reardon alleges against East, Alcorn, and Communicare a claim for "tortious interference into business." [30] at p. 41. Presumably, he intended to assert a tortious

interference with business relations claim.

In order to prevail on a tortious interference with business relations claim, a plaintiff must prove four elements:

> (1) the acts were intentional and willful; (2) the acts were calculated to damage the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted.

*PDN v. Loring*, 843 So.2d 685, 688 (Miss. 2003).

Here, Reardon has not alleged that the Defendants had knowledge of any lawful business in which he was engaged. It is also unclear what lawful business was actually damaged as a result of the Defendants' conduct. Reardon has not pled sufficient facts to support a tortious interference with business relations claim. Count Twelve is therefore DISMISSED.

v.    *Counts Thirteen and Fourteen*

In Counts Thirteen and Fourteen (which are identical), Reardon alleges that all Defendants should be held liable for defamation of character.

To succeed on a defamation claim, a plaintiff must establish four elements: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Simmons Law Group, P.A. v. Corp. Mgmt., Inc.*, 42 So.3 511, 517 (Miss. 2010).

Reardon has not plausibly pled such a claim. He fails to make clear which Defendant he contends defamed him. The claim (or claims) is asserted against all Defendants, but there is no explanation as to the statement he attributes to each Defendant, how such statements were published, or any fault associated therewith. *See Griffin v. HSBC Mortg. Servs., Inc.*, 2015 WL

4041657, at *5 (N.D. Miss. July 1, 2015) (quintessential shotgun pleadings, subject to dismissal under Rule 12(b)(6), "contain several counts, each one incorporating by reference the allegations of its predecessors" and "fail to distinguish between the actions of named defendants").

Ultimately, Reardon has failed to plead a plausible defamation claim. Counts Thirteen and Fourteen of the Amended Complaint [30] lack merit and must be DISMISSED.

vi.    *Counts Fifteen and Sixteen*

In Count Fifteen, Reardon asserts a claim for intentional infliction of emotional distress against East, Beard, Alcorn, Rogers, Communicare, and Lafayette County Chancery Court. In Count Sixteen, he alleges negligent infliction of emotional distress against East, Beard, Alcorn, Rogers, Communicate, and the Lafayette County Chancery Court.[7]

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish the following:

> (1) The defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Pointer v. Rite Aid Headquarters Corp.*, 327 So.3d 159, 170 (Miss. Ct. App. 2021) (citations and quotation marks omitted).

Reardon has failed to plead plausible allegations to reach this threshold. He has not alleged any actions which would evoke outrage or revulsion in a civilized society. And, again, he has not

---

[7] The negligent infliction of emotional distress claim is certainly barred by the MTCA. *See, e.g., Thomas v. City of Laurel, Miss.*, 2021 WL 1148470, at *8 (S.D. Miss. Mar. 25, 2021) ("Therefore, the individual Defendants may not be personally liable for those torts that fall within the scope of the MTCA — negligent hiring/retention/supervision/training, *negligent infliction of emotional distress*, and civil conspiracy[.]") (emphasis added).

even specified which facts outlined in the extensive facts section of his Amended Complaint [30] are connected to which Defendant. *See Griffin*, 2015 WL 4041657 at *5. He has wholly failed to plead a plausible emotional distress claim. Counts Fifteen and Sixteen must be DISMISSED.

> III.     *Reardon's Motions [60, 69, 71, 72, 81]*

Reardon has made numerous filings, spanning a myriad of issues. For example, one filing is styled as "Plaintiff's Sworn Declaration and Request for Emergency Injunctive Relief with Stipulated Order for Protection" [60]. This filing consists of twelve handwritten pages narrating Reardon's conflicts with law enforcement. It explains that he was, at least at that time, in custody serving a one-year sentence on an aggravated stalking conviction out of Lafayette County. Reardon ultimately concluded by requesting that this Court order his release from imprisonment. Reardon did not comply with the requirements set forth in the Local Rules relating to request for emergency relief. And even if he had done so, the reasons why such a request is improper before this Court are numerous.

Another filing is styled as an "Emergency Motion for Relief from Judgment or Order with Prayer for Injunction and Protection" [71]. This Motion [71] appears to essentially be a request for reconsideration of the Court's previous Order [51] dismissing the State of Mississippi and the Mississippi Department of Mental Health as Defendants. Reardon requests reconsideration on the basis that he did not receive notice of the original Motions [38, 43] and that he therefore did not have an opportunity to respond. However, nothing in the filing indicates anything that would change the outcome on that issue. Those entities are entitled to Eleventh Amendment immunity.

Considering the fact that it has already determined Reardon has failed to state a plausible claim, the Court sees no need to further address each of Reardon's filings individually. They will be DENIED AS MOOT.

*IV.*     *Further Explanation*

Having found that all of Reardon's claims lack merit, this lawsuit is due to be, and will be, dismissed. In so doing, the Court reiterates that Reardon's Amended Complaint [30] is far from a model of clarity. In reaching its conclusion, the Court has attempted to decipher Reardon's claims to the greatest extent possible. With that being said, the Court has reviewed the Amended Complaint [30] (and the entire record in full) and any arguments not addressed herein would not have changed the outcome.

Finally, the Court notes that Reardon's grievance appears to be based upon a belief that Mississippi's statutory scheme for involuntary commitment proceedings is flawed and perhaps even unconstitutional. For instance, toward the beginning of his Amended Complaint [30], he states that the lawsuit "is founded in principle and already settled case law surrounding deprivation of liberty and the constitutionality of controversial state mental health laws." [30] at p. 2. But while Reardon might desire to have Mississippi's statutory scheme stricken down, he did not, despite asserting seventeen separate claims, request the same in the "Claims" section of the Amended Complaint [30]. In other words, he never actually requested that relief.

As to the claims Reardon did assert, he has failed to allege sufficient facts which, taken as true, would entitle him to relief.

*Conclusion*

For the reasons set forth above, the Defendants' Motions [46, 52, 84] are GRANTED. Reardon's Motions [60, 69, 71, 72, 81] are DENIED AS MOOT. All claims asserted in Reardon's Amended Complaint [30] are hereby DISMISSED *with prejudice*. This CASE is CLOSED.

SO ORDERED, this the 28th day of June, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

25